Warren NOLAND; Weldon Noland; George Gudgell; Joe Mitchell, Douglas Fry and Jeff Barker, for and on behalf of Argosy Investments, a general partnership; Arlyn Liddell; Jack N. Burdick; Mark Haroldsen; Robert Rice; George Sabol; Doug Wyatt, Ron Miller and Ruthella Reick, for and on behalf of MWR Enterprises, a general partnership; Clarence C. Bush; Investors Coal Corporation, Inc., a Utah corporation; Reed Petersen; Frank Hart; James Hart; Ned Parson; Jack Parson; Robert Whittlesey; Paul Oerter; Robert Messenbaugh; Lawrence Repsher; C.E. Creagh, Jr., Oscar Henry and Robert Bax, for and on behalf of Whitley Coal Partnership, a general partnership; Newell Sargent; John Olsen; and John Laws, Plaintiffs-Appellants,

v.

Charles C. BARTON; J. Daniel Deeter; Ross Conti; Levantine American Coal Investments, Ltd., a Georgia corporation; O. Jackson Cook and Cyrus Hashemi, Defendants-Appellees,

Kermit Pickett; William L. Whitley; Westmoreland Coal Company, a Delaware corporation; H. Gates Brown; Intercoast Coal Company, a California corporation; Dudley G. Kirkpatrick and William H. Marksberry, Defendants.

No. 82–1489.

United States Court of Appeals, Tenth Circuit.

Aug. 20, 1984.

John P. Ashton, Salt Lake City, Utah (Steven L. Taylor and Geoffrey W. Mangum, Salt Lake City, Utah, with him on briefs) all of Prince, Yeates & Geldzahler, Salt Lake City, Utah, for plaintiffs-appellants.

M. David Eckersley of Houpt & Eckersley, Salt Lake City, Utah, for the defendants-appellees.

Before BARRETT, BREITENSTEIN and SEYMOUR, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Plaintiffs-appellants sued to recover damages under the federal securities laws, the Utah Blue Sky Laws and for breaches of fiduciary duties against, among others, former officers and directors of Whitley Coal Company. Defendant Barton and others filed motions for dismissal or for summary judgment. Plaintiffs filed for leave to amend their complaint dropping Investors Coal Corporation, Inc., as a plaintiff and substituting Whitley Coal Company. The district court entered an order dismissing Counts VIII and IX and those portions of Counts VI and VII that pertained to the defendants seeking dismissal, and denying the plaintiffs' motion to amend. In so doing it entered an appropriate order under Rule 54(b), F.R.Civ.P. allowing this appeal. The plaintiffs appeal. We affirm.

In considering the grant of the motion to dismiss, we take the allegations of the complaint as true. The dispute revolves around the sale and purchase of Whitley Coal Company on April 3, 1979. Before this sale there had been several transactions involving many of the individual and corporate plaintiffs and defendants. In December, 1977, all plaintiffs, except Investors Coal Corp., Inc., purchased interests in a California limited partnership known as Ameagle Coal Partners, Limited. As part of the purchase, the partnership acquired an operating interest in a coal deposit near Ameagle, West Virginia. Whitley Coal previously had subleased the property from Westmoreland Coal Company and was obligated to manage the project and to perform the services necessary to coordinate and direct the processing and marketing of coal.

As of December 21, 1977, the limited partners paid to the partnership $700,-000.00, much of which went to Whitley Coal as advance royalties. They paid a similar amount on or before December 21, 1978. Plaintiffs allege that as of the time of their original contributions, the defendants, Whitley and others, controlled Whitley Coal Company. They seek damages under the securities acts for false representations of material facts made by the defendants at that time.

In December, 1978, the defendants Whitley and others, agreed to sell Whitley Coal Company to Levantine American Coal Investments, Ltd., a Georgia corporation. The arrangement was consummated on January 6, 1979, and Levantine became the owner of Whitley Coal Company. In February, 1979, the officers and directors of Levantine, Barton, Cook, Hashemi, and Brown, told the general partner of Ameagle Coal Partners, Ltd., that Whitley Coal had been unsuccessful in its attempt to obtain financing for the coal mining operation. On February 28, 1979, a meeting of the limited partners was held with defendants Pickett, Barton, Cook, and Brown at which time the limited partners were told that financing had not been obtained for the project.

In March, 1979, Hart, a representative of the limited partners, was given by Levantine an option to purchase the Whitley Coal Company. Plaintiffs allege that there was still a large amount of partnership monies in Whitley Coal, and the partners felt that they had no alternative but to purchase Whitley from Levantine in an effort to save the remainder of their money. The option was exercised on April 3, 1979 by the plaintiffs paying Levantine $5,000.00, the amount paid by Levantine to purchase the corporation from the individual defendants.

Sometime after the April 3, 1979 purchase, the plaintiffs do not give a date, the limited partners allege that they learned that between January 6, 1979 and April 3, 1979, approximately $322,000.00 had been improperly paid out to defendants Barton, Cook and Hashemi by Whitley Coal. This suit was filed in response to this discovery. Counts VI, VII, VIII and IX of the complaint allege that Barton and other defendants wrongfully converted assets of Whitley Coal and otherwise breached their fiduciary duties to Whitley Coal. The trial court dismissed these counts inso-

far as they applied to the defendants seeking dismissal on the ground that Rule 23.1 of both the federal rules and the Utah rules, the provisions of which are identical, denies recovery since the alleged improprieties occurred prior to the time Investors Coal became a shareholder of Whitley Coal.

The "contemporaneous ownership" rule embodied in Rule 23.1 requires that the complaint shall aver that "the plaintiff was a shareholder or member at the time of the transaction of which he complains...." As said in *Bangor Punta Operations, Inc. v. Bangor & Aroostook Railroad Co.*, 417 U.S. 703, 710, 94 S.Ct. 2578, 2583, 41 L.Ed.2d 418, the rule proclaims that a "shareholder may not complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions." See also *Amen v. Black*, 10 Cir., 234 F.2d 12, 23.

The court also denied leave to amend the complaint by substituting Whitley Coal for Investors Coal finding that "[t]he attempt to circumvent this rule by bringing the action in the name of the corporation which they now control, likewise must fail." This holding conforms to the statement in *Bangor Punta*, supra, 417 U.S. at 713, 94 S.Ct. at 2584 that "where equity would preclude the shareholders from maintaining an action in their own right, the corporation would also be precluded."

The rule of equity enunciated in *Bangor Punta* that would prevent a shareholder from recovering when he obtained his shares from a wrongdoer clearly applies in this case. Further, this case involves a change of ownership. Since ICCI purchased all of the company's stock, no shareholder owned stock during the time of the alleged mismanagement. In such a case, even the *Bangor Punta* dissenters would apply the contemporaneous ownership rule to bar the suit. 417 U.S. at 720–721, 94 S.Ct. at 2587–2588.

Plaintiffs cite several cases in which *Bangor Punta* was not applied. Generally, these involved starkly different fact situations. In *National Union Electric Corp.*

*v. Matsushita Electric Industrial Co., Ltd.*, E.D.Pa., 498 F.Supp. 991, the case was filed prior to the tender offer by which Electrolux, the parent company, came to control the subsidiary corporation in question. Further, Electrolux did not acquire its holdings from those who participated or acquiesced in the wrongdoing. Finally, the deal was structured such that Electrolux and those from whom it purchased the stock contemplated that the lawsuit would accompany the subsidiary when it changed hands. In *Meyers v. Moody*, 5 Cir., 693 F.2d 1196, cert. denied —— U.S. ——, 104 S.Ct. 287, 78 L.Ed.2d 264, the court found that a recovery would not constitute a windfall to the purchaser of the company's assets because in making the purchase agreement, the parties agreed that any recovery in the existing lawsuit would be applied against the defendant's obligations. 693 F.2d 1208.

At the time of the purchase, plaintiffs knew of the assets of Whitley Coal. The appellants say in their brief, p. 14, that "when the option was exercised, however, the limited partners were informed by Levantine that Whitley Coal had only $164,000 in cash assets which amount included a refund of The Trade Continental Bank loan commitment fee in the amount of $107,500." The plaintiffs were represented by counsel in the negotiations. They purchased all of the stock in Whitley Coal on April 3, 1979, after the events of which they complain had occurred. With a 100 percent change in stock ownership, they are clearly barred by Rule 23.1. Plaintiffs have no standing to maintain the action and the court properly denied leave to amend the complaint to allow the corporation to sue.

Plaintiffs say that *Bangor Punta* does not preclude claims for conversion where, at the time of purchase, the purchasers were not aware of the conversion. They rely on *Home Fire Insurance Co. v. Barber*, 67 Neb. 644, 93 N.W. 1024, a case cited in *Bangor Punta*. See 417 U.S. at 710–711, 94 S.Ct. at 2582–2583. *Home Fire Insurance* says, supra, 93 N.W. at 1035:

"If he concealed and covered up these transactions by availing himself of the opportunities afforded him as secretary and manager of the company, and they were not discovered until a change in management resulted in an investigation of the books, we see no reason why the company should not recover the sums so misappropriated."

The disbursements complained of were made with the full authority or with the knowledge of the authorized officers and directors of Whitley Coal. There has been no showing of any secret transactions. The expenditures cannot be deemed a conversion because of the judgment of the subsequent officers and directors that they should not have been made.

■ Plaintiffs argue further that the Court in *Bangor Punta* anticipated a "continuing harm" exception to *Bangor Punta* when it stated that:

"In *Home Fire*, Dean Pound suggested that equitable principles might not prevent recovery where the effects of the wrongful acts continued and resulted in injury to present shareholders." 417 U.S. at 711, n. 6, 94 S.Ct. at 2583, n. 6.

The trial court was correct in finding that even assuming that a "continuing harm" exception may exist under *Bangor Punta*, it would not apply on the facts of this case.

Plaintiffs were not misled as to the assets of the corporation. In *Bangor Punta*, as in this case, the parties purchased a corporation with depleted assets; the depletion did not continue after the purchase. Thus there are no unique effects present in this case which would lead to the application of a "continuing harm" exception.

Affirmed.