ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandante y recurrente, *v.* URBANIZADORA DAMIRO, INC., ETC., demandados y recurridos.

*Número:* R-81-82        *Resuelto:* 8 de marzo de 1982

*Héctor A. Colón Cruz, Procurador General,* y *Marta Quiñones, Procuradora General Auxiliar,* abogados del recurrente; *Aldo Segurola De Diego,* de *Segurola, Montalvo & Lugo,* abogado de National Insurance Co.; las demás partes recurridas no comparecieron.

PER CURIAM: La Urbanizadora Damiro construyó la urbanización Torrimar en Guaynabo. La Junta de Planificación autorizó la preparación de los planos de construcción en informe de 5 de junio de 1963. Se condicionó el permiso a la construcción de una zona de recreo. Hasta que se construyesen las obras de recreo no se expedirían permisos de uso a más de dos terceras partes de las casas a erigirse.

A solicitud de la urbanizadora, la Junta consideró favorablemente el 10 de abril de 1964 el desarrollo del

terreno remanente y otras variaciones al informe original. Se dispuso que "las facilidades [*sic*] vecinales estarán construidas cuando se haya expedido el permiso de uso para tres cuartas (3/4) partes de cada uno de los tipos de viviendas . . .". El documento disponía que los acuerdos incorporados en él "están sujetos a revisarse de tiempo en tiempo según las condiciones varíen".

Unos días más tarde, el 23 de abril de 1964, también a propuesta de la urbanizadora, se aprobaron varios cambios, entre ellos a la zona de recreo, la cual se amplió para servir a otras urbanizaciones vecinas.

El 2 de abril de 1964 la Caribbean Insurance Company expidió fianza para garantizar el 50% de la construcción de las obras de recreo a que la urbanizadora se había obligado. La Fianza montaba a $24,805. La otra mitad fue garantizada el 20 de mayo de 1965 por la National Insurance Company. Al suscribirse este segundo contrato ya se habían aprobado los cambios aludidos en los informes de abril de 1964, pero se limitó la responsabilidad de National a la mitad del costo de las obras de recreo según concebidas originalmente.

La urbanizadora no construyó la zona de recreo. La Junta le indicó que aceptaría la aportación del dinero acordado inicialmente, o sea, $49,610. La urbanizadora se negó y fue demandada, junto a las fiadoras, el 5 de junio de 1970. El Estado procedió, mientras tanto, a construir la zona de recreo. El costo fue casi diez veces mayor. La demanda fue por los $49,610 originales, más intereses y daños. Contra las fiadoras se demandó responsabilidad solidaria con Damiro únicamente en cuanto a la mitad de la suma afianzada por cada cual.

Tras largos años de trámite pudo celebrarse el juicio en su fondo. El Tribunal Superior dictó sentencia el 14 de enero de 1981 declarando sin lugar la demanda. El Estado acudió en alzada ante este foro. Acordamos revisar.

La fiadora National Insurance argumenta que quedó liberada de la fianza porque hubo novación de la obligación garantizada. Aduce que varió el presupuesto de la zona de recreo, al alterarse sus términos, de $49,610 a $479,264.18. No tiene razón. No se dan en este caso los requisitos de la novación extintiva. *Warner Lambert Co.* v. *Tribunal Superior*, 101 D.P.R. 378, 388–394 (1973). Las dos obligaciones no son incompatibles. No se declaró expresamente que la obligación general de construir la urbanización, sujeto a determinadas condiciones, quedó sustituida por una enteramente nueva. Lo que hubo a todas luces fue una modificación del acuerdo principal. La novación extintiva extingue la fianza, mas no la modificativa. J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 10ma ed., Madrid, Ed. Reus, 1977, T. IV, pág. 737.

Aquí ni puede hablarse siquiera de modificación obligacional. Es cierto que se amplió el área de recreo, lo que exigió un presupuesto mayor, pero la obligación de la urbanizadora y sus fiadoras no fue alterada. Su responsabilidad quedó limitada a los mismos $49,610 originales. Ningún cambio que hubiese ocurrido en este respecto, además, y vimos que nada ocurrió, hubiese podido beneficiar a la fiadora que lo invoca. La National Insurance otorgó el contrato de fianza después del nuevo diseño del parque de recreación.

La National Insurance señala también que no es responsable porque las obras afianzadas no pudieron ser construidas, ya que, según alega, la Junta nunca aprobó los planos correspondientes ni nunca tuvo la intención de aprobarlos. El señalamiento es inmeritorio. La Junta no aprobó los planos porque nunca se sometieron. Los autos revelan, además, que en los informes de 5 de junio de 1963 y de 10 de abril de 1964 —en este último es que se cambia la zona de recreo— se autorizó la presentación de los planos de construcción correspondientes y que el 28 de enero de 1966 la Junta aun llegó a remitirle a la

urbanizadora planos del área del parque. La urbanizadora nunca demostró intención alguna de cumplir, mediante pasos para construir las obras concernidas o vía la consignación de su equivalente en dinero, la obligación que contrajo con la Junta.

Resta por examinar el efecto sobre los contratos de fianza de la concesión por la Junta, sin el asentimiento de las fiadoras, de permisos de uso a más del 75% de las viviendas construidas. El Art. 1751 del Código Civil, 31 L.P.R.A. sec. 4956, dispone:

> Los fiadores, aunque sean solidarios, quedan libres de su obligación siempre que por algún hecho del acreedor no puedan quedar subrogados en los derechos, hipotecas y privilegios del mismo.

Hemos señalado repetidas veces que "[y]a no rige la antigua doctrina elaborada en los tiempos de los fiadores gratuitos al efecto de que la menor violación del contrato por parte del dueño relevaba a la fiadora de responsabilidad *in toto*". *Olazábal* v. *U.S. Fidelity, etc.*, 103 D.P.R. 448, 454 (1975). Véase: *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739, 745 (1964). En vista de que las fianzas se prestan ordinariamente mediante paga, hemos abandonado también la norma de la interpretación restrictiva de la fianza y hemos sancionado su interpretación liberal, favorable al acreedor en cuanto sea legítimamente permisible. *Olazábal*, supra, *Demas* v. *Builders Ins. Co.*, 109 D.P.R. 774 (1980).

El Art. 1751 significa que el fiador puede ser liberado, mas solo en la medida en que algún acto del acreedor impida la subrogación del fiador en los derechos de aquél contra el deudor. Castán, *op. cit.*, pág. 739; J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1973, T. XII, págs. 484–486. El fiador únicamente puede hacer valer sus derechos bajo el Art. 1751 si el acto del acreedor le ha causado verdadero

perjuicio, perjuicio sustancial a su facultad subrogatoria. Si el perjuicio es parcial la liberación es tan solo parcial. La carga de probar el perjuicio le corresponde al fiador. Si no existe nexo causal entre el acto del acreedor y el impedimento en la subrogación no hay liberación. Tampoco hay liberación si el fiador no es diligente en reclamarle al deudor afianzado. Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1953, T. XXVIII, págs. 691–693. M. Fragali, *Delle Obbligazioni* (volumen separado de Scialoja y Branca, *Commentario del Codice Civile*), Roma, Soc. Ed. del Foro Raynaud, *Droit Civil*, París, Sirey, 1971, T. III, Vol. 1, págs. 348–349; H., L. y J. Mazeaud, *Leçons de Droit Civil*, 4ta ed., París, Ed. Montchrestien, 1974, T. III, Vol. 1, págs. 30–31.

Los autos de este caso no permiten emitir juicio sobre las interrogantes siguientes: ¿Probó el fiador que la venta de casas en exceso de lo dispuesto lo perjudicó, parcial o totalmente, al extremo que le *impidió* subrogarse en los derechos del acreedor? ¿No benefició en vez tal transacción, dentro de los hechos particulares de este caso, la continuada marcha de las obras, para provecho tanto de la urbanizadora como de las fiadoras? ¿Actuaron las fiadoras con la necesaria diligencia? Consideramos que el caso debe remitirse a instancia para el esclarecimiento de estos hechos críticos.

En consideración a lo expuesto *se revocará la sentencia recurrida y se devolverá el caso a instancia para procedimientos ulteriores compatibles con esta opinión.*

El Juez Asociado Señor Irizarry Yunqué no intervino.