EASTERN SANDS, INC. y FRANCISCO RINCÓN, demandantes y recurrentes, *v.* ROIG COMMERCIAL BANK, TURTLE ASSOCIATES, MILTON E. MARTÍNEZ MARTÍNEZ, la SOCIEDAD LEGAL DE GANANCIALES que tiene con su esposa y el BUFETE WOODS & WOODS, demandados y recurrido el primero.

*Número:* RE-92-105 *Resuelto:* 9 de mayo de 1996

*Michel J. Godreau*, abogado de los recurrentes; *Luz E. Santana Peña*, abogada de los recurridos.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La parte demandada y recurrida, Roig Commercial Bank (en adelante ROIG), era acreedora pignoraticia de la corporación demandante y recurrente Eastern Sands, Inc. (en adelante EASTERN). La entrega del bien constituido en prenda a un tercero por parte de ROIG suscita la controversia aquí trabada.

De la moción presentada por los demandantes recurrentes ante el tribunal de instancia para solicitar sentencia sumaria a su favor se desprenden, *incontrovertiblemente*, los hechos siguientes.

En febrero de 1984 EASTERN tomó un préstamo de ROIG por treinta y cuatro mil trescientos veintidós dólares con cuarenta centavos ($34,322.40). Para garantizar que pagaría la deuda, EASTERN constituyó una prenda a fa-

vor de ROIG consistente en un pagaré al portador por cuarenta mil dólares ($40,000) con vencimiento a su presentación, garantizado a su vez con una hipoteca sobre un terreno en Humacao propiedad de EASTERN. En febrero de 1985 EASTERN vendió la finca gravada por el pagaré hipotecario a Julio & José Auto Sales (en adelante J. & J.), quien retuvo del precio de compra una suma suficiente para saldar el préstamo de EASTERN a ROIG, entonces reducido a veintidós mil cuatrocientos cincuenta y cuatro dólares con sesenta y ocho centavos ($22,454.68). J. & J. incumplió con su compromiso de saldar el remanente del préstamo de EASTERN, no sin antes haber hipotecado el terreno adquirido de EASTERN para obtener un préstamo de cincuenta mil dólares ($50,000) de la parte también demandada recurrida Turtle Associates (en adelante TURTLE). Posteriormente, J. & J. también incumplió con los términos del préstamo tomado a TURTLE, por lo que TURTLE decidió ejecutar la hipoteca, segunda en rango que gravaba el inmueble. Ante esta situación, en diciembre de 1985 Francisco Rincón, presidente de EASTERN, saldó con dinero personal la totalidad del préstamo de EASTERN que J. & J. se había comprometido a pagar.[1] En julio de 1987 el señor Rincón requirió la entrega de la prenda que aseguraba el pago de dicha deuda, pero ROIG le informó que la había entregado a los representantes legales de TURTLE, el Bufete de Woods & Woods, también demandado recurrido, para cancelarlo junto con la hipoteca que lo garantizaba, lo que hicieron en febrero de 1988. TURTLE procedió entonces a vender la propiedad libre de cargas.

A tenor con los hechos anteriormente relatados, EASTERN y Rincón demandaron el 30 de noviembre de 1988 a ROIG, TURTLE, al Bufete de Woods & Woods y a un socio

---

[1] Previendo el incumplimiento de José & Julio Auto Sales con su compromiso de saldar el remanente del préstamo de Eastern Sands, Inc., Francisco Rincón había dado instrucciones a Roig Commercial Bank para que abonara ciertos depósitos suyos al pago de la deuda de Eastern Sands, Inc.

de éste, el licenciado Milton Martínez Martínez, abogado que canceló el pagaré y la hipoteca, y alegaron que la entrega de la prenda a un tercero les privó de una garantía real con la que asegurar sus respectivas acreencias. Según los demandantes, al saldar la deuda de EASTERN el señor Rincón se subrogó en los derechos de ROIG y debió haber recibido la prenda como garantía de que su crédito sería satisfecho. EASTERN, a su vez, también reclamó interés sobre la prenda para poder cobrar de J. & J. lo adeudado en concepto del dinero que retuvo tras la compraventa para saldar el préstamo a ROIG. Los demandantes imputaron a los demandados haber conspirado para impedir que pudieran valerse de la garantía hipotecaria, con la intención de liberar el inmueble de la primera hipoteca, por lo que debían responder solidariamente por los daños que alegan haber sufrido, ascendentes a ciento cincuenta mil dólares ($150,000).

ROIG contestó la demanda admitiendo los hechos esenciales alegados en ésta y presentando las defensas que discutiremos más adelante. Se opuso, además, a la solicitud de sentencia sumaria presentada por los demandantes y, a su vez, en el mismo escrito solicitó sentencia sumaria a su favor. Dicho escrito y los documentos presentados en su apoyo *no controvierten en forma alguna* la relación de hechos consignada anteriormente. Tanto la mencionada oposición como la solicitud de sentencia sumaria presentada por la referida institución bancaria se basa en meras conjeturas, suposiciones y especulaciones.

A pesar de lo anterior, tras innumerables trámites procesales, el tribunal de instancia, el antiguo Tribunal Superior, Sala de Humacao, dictó sentencia sumaria el 31 de enero de 1992, en la que desestimó la demanda.(²) En su escueta sentencia el tribunal reconoció que el señor Rincón

---

(²) El tribunal había dictado sentencia sumaria para disponer de la misma forma del caso el 25 de noviembre de 1991, pero acogió la solicitud de reconsideración de los demandantes, aquí recurrentes.

se subrogó en los derechos del acreedor, ROIG, pero que al pagar renunció a ello ya que lo hizo con la intención de extinguir el crédito, no de obtenerlo mediante la subrogación. Como secuela a dicha determinación, el tribunal concluyó que ROIG debió haber restituido a EASTERN el pagaré hipotecario dádole en prenda por ésta, pero concluyó además que, por razón de que el señor Rincón "consideró que el pagaré ... no representaba deuda alguna", su entrega a TURTLE no le representó perjuicio. Solicitud de revisión, Apéndice, pág. 3.

Luego de intentar infructuosamente que el tribunal reconsiderara su decisión, EASTERN y el señor Rincón solicitaron revisión de dicha sentencia ante este Tribunal alegando, en síntesis, que el tribunal de instancia mal interpretó el negocio de prenda, que no supo distinguir entre la personalidad jurídica del señor Rincón y la de EASTERN, y que no aplicó correctamente el ordenamiento correspondiente a la renuncia de los derechos. Expedimos el auto de revisión solicitado conjuntamente por ambos demandantes en el presente recurso.

De los demandados, sólo ROIG ha comparecido, en "Oposición a solicitud de revisión" presentada el 22 de junio de 1992. En agosto de 1992 los codemandados, TURTLE y el Bufete de Woods & Woods, solicitaron treinta (30) días adicionales para comparecer, pero hasta el día de hoy no lo han hecho. No obstante, los planteamientos ante nos han sido extensamente debatidos en instancia y en las respectivas comparecencias de las partes, por lo que nos hallamos preparados para resolver este caso en sus méritos.

I

La controversia entre las partes se suscita por la entrega hecha por ROIG a los abogados de TURTLE del pagaré que garantizaba la deuda de EASTERN y la subsiguiente cancelación de éste.

Como primer señalamiento de error, los demandantes alegan que "[e]l tribunal de instancia incidió en su percepción, análisis y calificación de la figura jurídica del pagaré entregado en prenda". Alegato de la Demandante-Recurrente, pág. 20. Plantean que la entrega del pagaré a TURTLE constituyó una violación a los deberes de todo acreedor pignoraticio y un incumplimiento de las obligaciones contractuales asumidas por ROIG, por lo que ha de responderles de los daños resultantes de sus actuaciones y omisiones.

 Al igual que la hipoteca y la anticresis, la prenda es un derecho real de garantía, pero se distingue de aquéllas por la transferencia de la posesión del bien garante a manos del acreedor. Este traslado posesorio no va acompañado de un correlativo desplazamiento titular, por lo que el Derecho Civil requiere que el acreedor asuma ciertas obligaciones hacia el bien pignorado. Art. 1768 del Código Civil, 31 L.P.R.A. sec. 5027. "Frente al deudor de la obligación", según el profesor Vázquez Bote, "el acreedor prendario ... es un simple poseedor *nomine alieno*, y, como tal, está sujeto a las obligaciones propias de todo poseedor, sobre todo a la de conservación diligente de la cosa. En su consecuencia, está obligado a mantener una conducta prudente en orden a la tenencia, evitando cualquier acto que pueda menoscabarla, debiendo realizar los actos de protección y seguridad que defiendan la cosa contra acontecimientos que puedan ponerla en menoscabo o destrucción". E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, San Juan, Ed. Butterworth, 1993, T. VIII, pág. 481. El Código Civil impone sobre el acreedor pignoraticio el deber general de "cuidar de la cosa dada en prenda con la diligencia de un buen padre de familia ...". Art. 1766 del Código Civil, 31 L.P.R.A. sec. 5025. Establece, además, prohibiciones específicas que limitan las facultades dispositivas del acreedor pignoraticio, tales como la incapacidad de éste para enajenar —Art. 1758 (31

L.P.R.A. sec. 5003)— o usar —Art. 1769 (31 L.P.R.A. sec. 5028— el bien dado en prenda.

■ Las restricciones al uso y el destino del bien prendario van encaminadas a conservar la integridad del bien pignorado, con la expectativa de que una vez quede satisfecho el crédito, la cosa dada en prenda revertirá a quien la constituyó. En dicho retorno consiste la última obligación del acreedor prendario: *la restitución*. La restitución no es otra cosa que *la devolución del bien dado en prenda a quien la constituyó en garantía del pago de una deuda*.

■ El acreedor pignoraticio tiene derecho a retener en su poder el bien garante "hasta que se le pague el crédito", por lo que, por lo menos hasta ese momento, no viene obligado a restituir la cosa dada en prenda.[3] El deudor, por su parte, no tiene derecho a exigir la restitución del bien prendario hasta que no pague su deuda.[4] Por lo tanto, la obligación de restitución no surge hasta que el deudor satisface el crédito al acreedor pignoraticio, lo que generalmente se hace mediante el pago, sin excluir otros mecanismos de extinguir el crédito. Vázquez Bote, *op. cit.*, págs. 481–482; F. Puig Peña, *Compendio de derecho civil español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. II, págs. 639–640 y 648; J.M. Manresa y Navarro, *Comentarios al Código Civil español*, Madrid, Ed. Reus, 1973, T. XII, pág. 567; Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1955, T. XXIX, pág. 338; J. Castán Tobeñas, *Derecho Civil español, común y foral*, Madrid, Ed. Reus, 1983, T. II,

---

[3] "El contrato de prenda da derecho al acreedor para retener la cosa en su poder o en el de la tercera persona a quien hubiese sido entregada, hasta que se le pague el crédito.

"Si mientras el acreedor retiene la prenda, el deudor contrajese con él otra deuda exigible antes de haberse pagado la primera, podrá aquél prorrogar la retención hasta que se le satisfagan ambos créditos, aunque no se hubiese estipulado la sujeción de la prenda a la seguridad de la segunda deuda." Art. 1765 del Código Civil, 31 L.P.R.A. sec. 5024.

[4] "No puede el deudor pedir la restitución de la prenda contra la voluntad del acreedor mientras no pague la deuda y sus intereses, con las expensas en su caso." Art. 1770 del Código Civil, 31 L.P.R.A. sec. 5029.

Vol. 2, pág. 493; J.L. Lacruz Berdejo, *Elementos de Derecho Civil,* Barcelona, Ed. Bosch, 1980, T. III, pág. 153; M. Albaladejo, *Curso de Derecho Civil español,* Barcelona, Ed. Bosch, 1982, T. III, pág. 429; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. III, Vol. 3, págs. 45–46; E. Serrano Alonso, en *Comentarios del Código Civil,* Madrid, Secretaría General Técnica del Ministerio de Justicia, 1991, T. II, págs. 1882 y 1890. Salvo la excepción particular que contiene el Art. 1765 del Código Civil, 31 L.P.R.A. sec. 5024 —que permite al acreedor retener la posesión de la cosa pignorada si el deudor ha contraído una segunda deuda con ella—(⁵) la restitución ha de hacerse *inmediatamente* después que el deudor ha satisfecho el crédito del acreedor y extinguido la obligación principal. L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil,* Madrid, Ed. Tecnos, 1989, Vol. III, pág. 482; Puig Brutau, *op. cit.,* pág. 45; Vázquez Bote, *op. cit.,* págs. 482 y 487; Puig Peña, *op. cit.,* págs. 641 y 643; Manresa y Navarro, *op. cit.,* págs. 546, 567; Serrano Alonso, *op. cit.,* págs. 1881–1882, 1890; Scaevola, *op. cit.,* págs. 374, 381 y 388; Castán Tobeñas, *op. cit.,* pág. 803.

De haberse realizado el pago por EASTERN, ésta como pignorante, era la única parte legitimada para recibir el pagaré hipotecario en restitución. Como consecuencia del pago, el bien constituido en prenda no podía haberle sido restituido a ninguna otra parte que no fuese a EASTERN o su representante designado para tomarla.

Sin embargo, los hechos de este caso indican que no fue EASTERN quien pagó la deuda con el banco, sino su presidente, el señor Rincón, en su capacidad personal. Por tanto, el señor Rincón reclama la restitución del pagaré en subrogación de los derechos del acreedor prendario.

---

(⁵) Art. 1765 del Código Civil, *supra.*

## II

■ El pago, en la mayoría de los casos, extingue la obligación principal y con ella mueren las garantías accesorias de la que la prenda es una. Arts. 1756 y 1418 del Código Civil, 31 L.P.R.A. secs. 5001 y 3943, respectivamente. Albaladejo, *op. cit.*, págs. 413 y 418; Lacruz Berdejo, *op. cit.*, pág. 146; Puig Brutau, *op. cit.*, págs. 35 y 46; Puig Peña, *op. cit.*, págs. 613, 632 y 648; Manresa y Navarro, *op. cit.*, págs. 543 y 546; Castán Tobeñas, *op. cit.*, pág. 487; Serrano Alonso, *op. cit.*, pág. 1874; Díez-Picazo y Gullón, *op. cit.*, pág. 477.

■ No obstante, cuando el pago de una deuda es realizado por un tercero, ello puede provocar la subrogación de éste en los derechos del acreedor original y cuando esto sucede la obligación y sus garantías no se extinguen. La novación que sufre la obligación principal es de tipo modificativa, lo que significa que, a pesar de los cambios, permanece con vida sin engendrar una nueva obligación que la reemplace. Art. 1157 del Código Civil, 31 L.P.R.A. sec. 3241. Véanse: *Constructora Bauzá, Inc. v. García López*, 129 D.P.R. 579 (1991); *E.L.A. v. Urb. Damiro, Inc.*, 112 D.P.R. 244, 247 (1982). Dado el carácter accesorio de las garantías del crédito, si la obligación principal permanece vigente tras el pago, la prenda tampoco se extingue. Por lo tanto, la manera en que se efectúe el pago determinará si la novación será extintiva o meramente modificativa; esto es, si se extingue o no la obligación principal. El pago que provoca la subrogación recibe el trato de una novación modificativa, *donde el único cambio surge en la identidad de la persona del acreedor*, no sobre la vigencia de la obligación principal. Art. 1157(3) del Código Civil, 31 L.P.R.A. sec. 3241(3). Como resultado de un pago por un tercero con efecto de subrogarle en la persona del acreedor, no surge el deber de restitución ya que, como la obligación principal no

ha sido extinguida, la prenda continúa con vida. Serrano Alonso, *op. cit.*, pág. 1890; Manresa y Navarro, *op. cit.*, 1967, T. VIII, Vol. 1, pág. 614; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1980, T. XVI, Vol. 1, pág. 43. Véanse, también: Puig Brutau, *op. cit.*, 1983, T. III, Vol. III, pág. 45, y ed. 1985, T. I, Vol. II, pág. 254.

■ El pago por tercero provoca la subrogación del que paga en los derechos del acreedor cuando (1) un acreedor paga a otro acreedor preferente, (2) el que paga no tiene interés en el cumplimiento de la obligación, pero cuenta con la aprobación expresa o tácita del deudor, y (3) cuando quien paga tiene interés en el cumplimiento de la obligación. Art. 1163 del Código Civil, 31 L.P.R.A. sec. 3247. Si bien un sector de la doctrina propone una interpretación literal del Art. 1163, *supra*, que toma las tres (3) situaciones consideradas como presunciones *juris tantum*, coincidimos con la vasta mayoría de la glosa en que en dichos casos la subrogación opera *ex lege*, o sea, automáticamente, no como mera presunción. Puig Brutau, *op. cit.*, 1985, T. I, Vol. II, pág. 253; Albaladejo, *Comentarios al Código Civil y compilaciones forales, op. cit.*, pág. 41. Sobre el particular Sancho Rebullida expresa que el Art. 1210 del Código Civil español, idéntico a nuestro Art. 1164 (31 L.P.R.A. sec. 3248), "no contempla la subrogación 'presunta' como contrafigura de la 'expresa' (art. 1209 II [correspondiente al segundo párrafo de nuestro Art. 1162 (31 L.P.R.A. sec. 3246)]), segundo término de la clasificación que estos preceptos establecerían; sino que regula la subrogación legal, contrafigura de la convencional; ambas son los términos de la clasificación a que estos preceptos responden. El art. 1210 no *presume* una voluntad subrogatoria cuando el tercero *solvens* se encuentra en alguna de las circunstancias previstas en él; en su caso lo haría *iuris et de iure*, pero creo que ni aun así; que impone el efecto subrogatorio *ministerio legis* cuando el tercero *solvens* se

encuentra en alguna de las tres (3) circunstancias enume-
radas, y ello, sin y aún contra la voluntad del acreedor
*accipiens*. A lo sumo, puede entenderse que el precepto
'presume' la voluntad del tercero en cuestión; pero ello
nada añade a la exigibilidad del crédito objeto de subroga-
ción, como tampoco añade nada a la admisibilidad de
prueba en contrario a la posibilidad de renuncia del tercero
a la subrogación. Como dice la [Sentencia del Tribunal Su-
premo español del 29 de mayo de 1984], las titularidades
del derecho de reembolso y de subrogación son cumulati-
vas, siendo la subrogación un efecto legal que se ofrece al
favorecido por él, pero que no se impone". Sancho Rebu-
llida, *supra*, págs. 312–313.([6])

■ Una vez están presentes las circunstancias propi-
cias para uno de los preceptos del Art. 1163 del Código
Civil, *supra*, ocurre la subrogación del que paga, que le
confiere el derecho a hacer suyo el crédito junto con todos
sus derechos, deberes y garantías. La prenda se transfiere
al subrogado en las mismas circunstancias ya que es, pre-
cisamente, una de las garantías del crédito que adquiere el
nuevo acreedor.

Los demandantes sostienen que las circunstancias que
acompañaron el pago del señor Rincón justifican la subro-
gación de éste en los derechos de ROIG ante EASTERN.
Según los demandantes, el señor Rincón pagó la deuda de
EASTERN a ROIG en su capacidad personal, no como ofi-
cial corporativo (lo que presupone, naturalmente, que nos
hallamos ante dos (2) personas jurídicas distintas, pues de
lo contrario el pago no lo hubiese hecho un tercero, sino el

---

([6]) Sancho Rebullida traza el origen del Art. 1164 de nuestro Código Civil, 31
L.P.R.A. sec. 3248, al Art. 1117 del proyecto de 1851, del que lo tomó el Art. 1227 del
Anteproyecto de 1882–88, que a su vez es idéntico al Art. 1210, que pasó al Código
español, y de ahí al nuestro. El Proyecto de 1851 "disponía que 'la subrogación tiene
lugar *por disposición de la ley* a favor': y, a continuación, enumeraba distintos su-
puestos de pago por tercero, entre ellos los tres del actual 1210". Sancho Rebullida,
*supra*, pág. 313. Véase, también, R. Bercovitz Rodríguez-Cano, *Comentario del Có-
digo Civil*, Madrid, Ministerio de Justicia de España, Centro de Publicaciones, 1991,
T. II, págs. 167–168.

mismo deudor, por lo que sería de aplicación todo lo anteriormente discutido sobre la restitución). Si este pago que hizo queda recogido en uno de los tres (3) supuestos de subrogación legal dispuestos en el Art. 1163 del Código Civil, *supra*, el señor Rincón debió haber adquirido de ROIG la prenda como garantía ante EASTERN.

La situación prevista en la primera subsección del Art. 1163 del Código Civil, *supra*, es claramente inaplicable, pues previo al pago el señor Rincón no era acreedor de EASTERN, por lo que no puede tratarse del pago de un acreedor a otro. En torno al segundo apartado, cabría la posibilidad de que EASTERN hubiese consentido al pago del señor Rincón, lo que hubiese dado paso a la subrogación. Sin embargo, las partes no ofrecieron prueba sobre la posición asumida por EASTERN ante el pago, de modo que sería incompleto el análisis que pudiéramos hacer sobre la aprobación del deudor al pago de tercero, que contiene el segundo cuadro de subrogación del Art. 1163, *supra*, aunque sospechamos que así fue. El tercer supuesto hace innecesario analizar si verdaderamente hubo un consentimiento de EASTERN al pago de tercero, pues cuando el que paga tiene interés en el cumplimiento se prescinde del consentimiento del deudor. Puig Brutau, *op. cit.*, 1985, T. I, Vol. II, pág. 253; R. Bercovitz Rodríguez-Cano, *Comentario del Código Civil*, Madrid, Ministerio de Justicia de España, Centro de Publicaciones, 1991, T. II, págs. 169 y 172.

■ El interés que ha de tener quien efectúa el pago es uno general sobre el cumplimiento de la obligación. El concepto de "interés" utilizado por el Art. 1163 del Código Civil, *supra*, es amplio y permite aplicarse a situaciones en las que diferentes factores motivan a la persona a pagar la deuda ajena, incluso cuando se hace "sin ánimo de reclamar el importe" de lo pagado. Puig Brutau, *op. cit.*, 1985, T. I, Vol. II, pág. 252. Véase, también, Sancho Rebullida, *Comentario del Código Civil*, supra, pág. 314. Por consi-

guiente, una parte interesada en el cumplimiento de una obligación puede ser cualquiera a quien "convenga el cumplimiento de aquélla". Manresa y Navarro, *op. cit.*, 1967, T. VIII, Vol. 1, pág. 920. Como presidente y principal accionista de EASTERN, el señor Rincón tenía un interés evidente y legítimo en el cumplimiento de la obligación contraída por EASTERN con ROIG. Los oficiales corporativos no sólo tienen el interés sino también la obligación de velar por los mejores intereses de la empresa. Art. 402 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 1402. Los accionistas, por igual, tienen intereses que transcienden sus inversiones particulares. La Ley General de Corporaciones entonces vigente reconocía la facultad a los inversionistas para llevar acciones derivativas externas contra terceros cuyas actuaciones hubiesen afectado el quehacer corporativo. Art. 1203 (31 L.P.R.A. sec. 2203).

El tribunal de instancia, para efectos de su sentencia sumaria, concluyó lo mismo pero hizo salvedad de que no adjudicaba la personalidad jurídica propia de EASTERN y que sólo asumía, para propósitos dispositivos, que el señora Rincón había pagado de su propio peculio.

ROIG alega que EASTERN es un álter ego del señor Rincón.([7]) De haber sido EASTERN y el señor Rincón la misma persona, el pago de éste último hubiese extinguido la deuda de EASTERN. Vencida y satisfecha la deuda garantizada por la prenda, ROIG hubiese entrado en la obligación inmediata de restituir la prenda al señor Rincón, lo que no hizo. De lo contrario, si efectivamente se trata de dos (2) personas jurídicas distintas, el pago por el señor Rincón de la deuda de EASTERN constituyó un pago de tercero. Hasta tanto no se pruebe lo contrario, el tribunal de instancia tendrá que otorgar y reconocer la personali-

---

([7]) El Roig Commercial Bank alega lo mismo sobre José & Julio Auto Sales. Oposición a solicitud de revisión, pág. 12, presentada ante el Tribunal Supremo el 22 de junio de 1992.

dad jurídica de EASTERN, separada e independiente de la del señor Rincón.

## III

Poco después del incumplimiento de J. & J. con los términos del préstamo que tomase a TURTLE, J. & J. confirió un poder al señor Rincón para que pudiera gestionar los negocios de la empresa y asegurar el cumplimiento de las obligaciones de ésta, las que a saber eran en ese momento el compromiso para saldar la deuda de EASTERN con ROIG y otro de pagar el préstamo tomado a TURTLE. Como apoderado de J. & J., el señor Rincón otorgó una opción a ciertas personas para comprar un lote segregado del terreno, adquirido por J. & J. de EASTERN, que estaba gravado, en primer término, como hemos visto, por el pagaré hipotecario constituido en prenda y luego por la segunda hipoteca que garantizaba el préstamo tomado a TURTLE.

El contrato de opción, celebrado el 25 de enero de 1986, describió los gravámenes a los que estaba sujeta la totalidad de la finca de la manera siguiente:

> —-SEGUNDO: Adquirió la descrita finca mediante Compraventa Reconociendo y Asumiendo Hipoteca, mediante la escritura número trece (13) de fecha veintid[ó]s (22) de febrero de mil novecientos ochenta y cinco (1985) ante el notario Miguel A. Valcourt Reinhardt, en Humacao, Puerto Rico.
> —-Se halla afecta a Hipoteca a favor de Turtle Associates por la suma principal de Cuarenta Mil Dólares ($40,000.00) según escritura de Hipoteca número cinco (5) otorgada el día veinticuatro (24) de mayo de mil novecientos ochenta y cinco (1985) ante el notario Thomas Doran Gelabert, en San Juan, Puerto Rico. Apéndice, pág. 60.([8])

---

([8]) Contrato de Opción de Compra, *Exhibit* A de la Oposición a la Sentencia Sumaria Solicitada por los Demandantes y Moción de Sentencia Sumaria a favor del Roig Commercial Bank, Apéndice Núm. 12, pág. 60 de la Solicitud de Revisión radicada por los demandantes-recurrentes el 6 de marzo de 1992 en el Tribunal Supremo de Puerto Rico.

Aunque el tribunal de instancia reconoció el efecto subrogatorio que tuvo el pago de tercero, le restó eficacia porque concluyó que al pagar el señor Rincón tenía la intención de extinguir la deuda de EASTERN y renunciar a su derecho a subrogarse. El tribunal dedujo la intención de renunciar del comportamiento del señor Rincón en dos (2) situaciones: al demorarse en exigir de ROIG el pagaré hipotecario como garantía del crédito que obtuvo por vía subrogatoria y al omitir mencionar en el referido contrato de opción la hipoteca constituida como la garantía prendaria que es objeto del presente pleito. Al hacer tal determinación, el tribunal se expresó como sigue:

> Los hechos no cuestionados en nuestro caso incluyen que el codemandante solicitó el pagaré un año y siete meses después de pagar la deuda, y que en un contrato de opción en el que representa al tercer poseedor [J. & J.], especial momento en que debió hacer hincapié en que no sólo existía una primera hipoteca, sino que era él precisamente el acreedor, en lugar de ello omite relacionar tal crédito hipotecario sobre la finca principal, son índices claros de que su voluntad al momento del pago fue de extinguir el crédito, no de obtenerlo vía subrogación, con toda probabilidad, para facilitar la transferencia. Sentencia Sumaria, pág. 3.

No hay duda de que el derecho a subrogarse es susceptible a renuncia. Art. 4 del Código Civil, 31 L.P.R.A. sec. 4. Quien teniendo derecho a ello, opta por no valerse de la protección que le extiende la subrogación y renuncia a ésta, tan sólo tiene a su alcance otros métodos menos efectivos de satisfacer su acreencia, tales como la acción de reembolso o de repetición, según lo contiene el Art. 1112 del Código Civil, 31 L.P.R.A. sec. 3162. Véase Albaladejo, *Comentarios al Código Civil y compilaciones forales, op. cit.*, pág. 40, y Albaladejo, *Comentarios al Código Civil, op. cit.*, pág. 172. La renuncia expresa —albergada en una expresión inequívoca de la intención de abdicar a un derecho— es la forma más apta para hacerlo sin excluir la posibilidad de que ella sobrevenga *de manera tácita*. No obstante cons-

tituye un requisito indispensable de toda renuncia, *expresa o tácita*, que ésta sea clara, terminante, explícita e inequívoca. *Torres Solís et al. v. A.E.E. et als.*, 136 D.P.R. 302 (1994); *Chico v. Editorial Ponce, Inc.*, 101 D.P.R. 759, 778 (1973); *Mendoza Aldarondo v. Asociación Empleados*, 94 D.P.R. 564, 577 (1967); *Quiñones Quiñones v. Quiñones Irizarry*, 91 D.P.R. 225 (1964); *Cabrera v. Doval*, 76 D.P.R. 777, 780 (1954). En *Quiñones Quiñones v. Quiñones Irizarry*, supra, págs. 265–266, expresamos que "[e]s cierto que el párrafo segundo del Art. 4 del Código Civil preceptúa que los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero. Pero la renuncia de derechos autorizada por ese artículo debe ser clara, terminante, explícita e inequívoca. Aunque se concede que puede ser expresa o tácita, la renuncia de derechos en general no se presume y es de estricta interpretación. No es lícito deducirla de expresiones de dudosa significación". (Escolio omitido.)

 Rechazamos la primera manifestación de renuncia aludida por el tribunal de instancia, fundada en la demora del señor Rincón en requerir del ROIG la entrega de la prenda. Un retraso en el ejercicio de un derecho no da base para presumir la intención inequívoca de renunciarlo, máxime cuando se trata de una acción sin término prescriptivo fijo, que queda sujeta al plazo de quince (15) años. Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Véanse, *e.g.*: J.I. Cano Martínez de Velasco, *La renuncia a los derechos*, Barcelona, Ed. Bosch, 1986, págs. 137–140, y las sentencias del Tribunal Supremo de España de 4 de mayo de 1976, Núm. 1989, XLII (Vol. I) Repertorio de Jurisprudencia 1474, y el 17 de mayo de 1941. La prescripción perdería todo significado e importancia si el ordenamiento exigiera ejercitar un derecho como requisito a que éste no se extinga dentro del término propuesto para hacerlo.

 Por otro lado, los derechos adquiridos por el nuevo

acreedor prendario tras su subrogación no dependen de que éste asuma posesión sobre el bien constituido en prenda. Si bien el Art. 1762 del Código Civil, 31 L.P.R.A. sec. 5021, requiere para constituir la prenda "que se ponga en posesión de ésta al acreedor", tenemos que recordar que la prenda ya estaba constituida cuando pagó el señor Rincón y que la subrogación no implica ni requiere que haya de constituirse nuevamente. Ya que la subrogación no extingue la obligación principal, la prenda permanece constituida y vigente. La posesión que se requiere para la constitución de la prenda es aquella que transfiere el deudor al acreedor;[9] una vez queda constituida y mientras permanece vigente, no se verá afectada por subsiguientes traspasos posesorios, sea a un nuevo acreedor o incluso a un tercero ajeno al contrato, según lo dispone el Art. 1769 del Código Civil, *supra*. Albaladejo expone en su *Curso de Derecho Civil Español, op. cit.*, pág. 427, que: "Una vez constituido el derecho real de prenda, ya no importa que la cosa salga de la posesión del acreedor (o del tercero); aquél subsiste aunque dicha posesión se pierda, o aunque pase la cosa a posesión de otra persona o incluso a la del concedente .... Y el acreedor pignoraticio, siempre que corresponda, puede ejercitar las oportunas acciones reales que su derecho de prenda le confiere ...." Véanse, también: Puig Brutau, *op. cit.*, 1983, T. III, Vol. 3, pág. 39; Serrano Alonso, *op. cit.*, pág. 1875. La prenda que quedó constituida al tomar posesión de ella el acreedor original, ROIG, permaneció constituida tras la subrogación del señor Rincón sin necesidad de que éste adquiriese posesión de la prenda.

---

[9] J.L. Lacruz Berdejo, *Elementos de Derecho Civil*, Barcelona, Ed. Bosch, 1980, T. III, págs. 149 y 152; J.M. Manresa y Navarro, *Comentarios al Código Civil español*, Madrid, Ed. Reus, 1973, T. XII, págs. 546–547 y 549–550; M. Albaladejo, *Curso de Derecho Civil español*, Barcelona, Ed. Bosch, 1982, T. III, págs. 424–426; E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, San Juan, Ed. Butterworth, 1993, T. VIII, pág. 479; J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. III, Vol. 3, pág. 29; F. Puig Peña, *Compendio de Derecho Civil español*, Madrid, Eds. Pirámide, 1976, T. II, págs. 637–639; J. Castán Tobeñas, *Derecho Civil español, común y foral*, Madrid. Ed. Reus, T. II, Vol. II, pág. 489.

ROIG alega en su defensa que en repetidas ocasiones puso la prenda a la disposición del señor Rincón pero que "se alza[ba] de hombros", "negándose a recogerlo". Oposición a solicitud de revisión, págs. 6 y 15, respectivamente. Según ROIG, la renuencia del señor Rincón a recibir el pagaré fue negligente y absorbe cualquier conducta negligente en la que hubiese incurrido el banco como resultado de su eventual entrega a TURTLE del bien constituido en prenda.

■ No estamos de acuerdo. Sobre quien pesa la obligación de entregar una cosa que el acreedor se niega a recibir no tiene como opción, según sostiene ROIG, dar por rechazada la entrega y optar por enajenar el bien pignorado. Véase Bercovitz Rodríguez-Cano, *op. cit.*, pág. 249.

En tal caso, lo que procedía era la consignación por ROIG del pagaré dado en prenda conforme a las disposiciones del Código Civil concernientes al ofrecimiento de pago y la consignación. Arts. 1130–1135 del Código Civil, 31 L.P.R.A. secs. 3180–3185.

Según ya hemos señalado, el tribunal de instancia también dedujo la intención de renunciar a la subrogación de la supuesta omisión en mencionar la primera hipoteca (que garantizaba el pagaré emitido por EASTERN) en el contrato de opción a compra que otorgó el señor Rincón, fungiendo esta vez como apoderado de J. & J. No estamos de acuerdo.

En el párrafo *SEGUNDO* de dicho contrato, el cual hemos transcrito anteriormente, se provee suficiente información a los adquirentes de la opción al efecto de que la parte vendedora obtuvo la totalidad de la finca, con un gravamen hipotecario, el cual se comprometieron a asumir, e incluye la referencia pertinente para permitir al matrimonio optante verificar si, en efecto, la finca fue liberada de la primera hipoteca. El mencionado lenguaje conflige con la

norma que exige que la renuncia de un derecho, aun en su modalidad tácita, no deje dudas de la intención clara, terminante, explícita e inequívoca de renunciar a tal derecho.

Por otro lado, irrespectivamente de lo que se hubiese expresado en el contrato de opción, la renuncia no podía surgir de un contrato en el que el señor Rincón no figuró como parte. El tribunal de instancia cometió error al pasar por alto que al otorgar el referido contrato de opción, el señor Rincón fungía estrictamente en capacidad representativa de J. & J. a tenor con los Arts. 18 y 19 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. secs. 2036 y 2037. Nada indica que hubiese rebasado la función representativa para que él se convirtiera en un partícipe del contrato de opción.

## IV

Finalmente, atendemos la conclusión a la que llegara el tribunal de instancia en torno a la ausencia de daños causados a los demandantes. En su sentencia sumaria el tribunal expresó que EASTERN no fue perjudicada por la entrega a TURTLE del pagaré hipotecario dado en prenda.

TURTLE no era el deudor constituyente de la prenda, por lo que no le correspondía recibir el bien pignoraticio en restitución. La entrega a TURTLE del pagaré dado en prenda a ROIG constituye una violación del deber de custodia y cuidado de *pater familiae* que impone la ley y viola el deber de restitución que tenía ROIG como acreedor pignoraticio. El incumplimiento de la obligación de restituir expone a dicho acreedor a la indemnización de los daños y perjuicios que su conducta cause, Art. 1766 del Código Civil, *supra*, "[t]odo ello si, por las circunstancias del caso, no procede otra responsabilidad mayor". Véanse: Vázquez Bote, *op. cit.*, pág. 488; Puig Brutau, *op. cit.*, 1983,

T. III, Vol. 3, págs. 40 y 46; Puig Peña, *op. cit.*, págs. 642–643.

Resolvemos que ROIG incumplió con sus obligaciones al entregar a TURTLE, un tomador ilegítimo, el bien constituido en prenda, por lo que debe responder por los daños que tal conducta haya ocasionado a la persona con derecho a recibir el mencionado pagaré prendario.

Alega EASTERN que como acreedora de J. & J. tenía derecho a valerse del pagaré, por lo que "la eliminación del pagaré anuló toda posibilidad de recuperar el pago de la deuda que J & J AUTO tenía con Eastern". Alegato de la Demandante-Recurrente, pág. 22.

A base de la prueba en que EASTERN sustentó su solicitud de sentencia sumaria, no podemos concluir que ésta adquirió el derecho a obtener el pagaré hipotecario tras el pago de la deuda que éste garantizaba, por lo que estaba impedida de exigir su restitución o reclamar la facultad subrogatoria del Art. 164 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2560, que también invoca en su alegato.[10] Para poder valerse de los derechos resultantes de la restitución o de la subrogación bajo el Art. 164 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, EASTERN tenía que haber pagado a ROIG, o posteriormente al acreedor subrogado del banco, el señor Rincón. La evidencia demuestra todo lo contrario, esto es, que ni pagó al acreedor original, en este caso ROIG, ni al señor Rincón, por lo que no podrá sustentar su reclamación de daños. Se confirmará la sentencia sumaria en este sentido.

Por su parte, el señor Rincón indiscutiblemente perdió el derecho a ejecutar la hipoteca constituida por EASTERN en garantía del pagaré dado en prenda al banco, ya que fue privado de su garantía para obtener el pago de aquella

---

[10] El Art. 14 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2058, concede el derecho a subrogarse al vendedor de una finca hipotecada que pague la deuda contraída por el comprador que en la venta hubiese descontado o retenido una suma del precio de la venta para saldar la deuda.

suma de dinero ($22,454.68) retenida por J. & J. como parte del precio de compraventa de la finca vendida a ésta, cuya retención fue hecha para pagar el balance del préstamo concedido a EASTERN por el ROIG, lo cual no hizo. Por lo tanto, dicha entidad bancaria debe responderle por los daños que dicha privación le haya causado.[11]

Es preciso aclarar, sin embargo, que la acción en contra del banco mencionado es de naturaleza contractual, por violación del contrato de prenda, mientras que la acción contra los restantes demandados es de naturaleza extra-contractual, por no mediar contrato entre éstos y la parte demandante. Por no haberse presentado prueba referente a dicha causa de acción, procede que se devuelva el caso al tribunal de instancia para la continuación de los procedimientos.

Por los fundamentos antes expuestos, *se dictará sentencia para revocar aquella parte de la sentencia sumaria dictada por la Sala de Humacao del extinto Tribunal Superior de Puerto Rico, que desestimó la causa de acción del codemandante Francisco Rincón y se devolverá el asunto al Tribunal de Primera Instancia, Sala Superior de Humacao, para la continuación de los procedimientos en forma compatible con esta opinión.*

Los Jueces Asociados Señor Rebollo López y Señora Naveira de Rodón no intervinieron.

---

[11] Por otro lado, de haber prevalecido finalmente la contención de ROIG al efecto de que EASTERN es un álter ego del señor Rincón, de éste sería el derecho a la restitución del pagaré dado en prenda a ROIG. Por lo tanto, también tendría derecho a ser compensado por los recurridos de los daños por él sufridos.