EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Multinational Life Insurance Company<br>Peticionaria<br><br>v.<br><br>Carlos M. Benítez Rivera y otros<br>Recurridos<br><br>v.<br><br>Tobías Carrero Nácar y otros<br>Terceros Demandados | Certiorari<br><br>2015 TSPR 63<br><br>193 DPR ____ |

Número del Caso:   CC-2014-306


Fecha: 18 de mayo de 2015


Tribunal de Apelaciones:

        Región Judicial de San Juan



Abogados de la Parte Peticionaria:

        Lcdo. Ramón Rosario Cortés
        Lcdo. Carlos E. Díaz Olivo
        Lcdo. Erick Rosado Pérez


Abogados de la Parte Recurrida:

        Lcdo. Jesús M. Del Valle
        Lcdo. Carlos R. Ríos Gautier
        Lcda. Gladys M. Míguez Corujo


Materia: Corporaciones – Legitimación activa de la corporación y de los accionistas, respectivamente, para instar acciones; indemnización a exdirectores y oficiales por gastos y honorarios de abogados por pleitos instados en su contra.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Multinational Life Insurance Company | *Certiorari* |
| Peticionaria | |
| v. | CC-2014-306 |
| Carlos M. Benítez Rivera y otros | |
| Recurridos | |
| v. | |
| Tobías Carrero Nácar y otros | |
| Terceros Demandados | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 18 de mayo de 2015.

Comparece ante nos Multinational Life Insurance Company (en adelante, "Multinational Life" o la "peticionaria") y solicita que revoquemos una Sentencia emitida por el Tribunal de Apelaciones. Mediante esta se confirmó una Sentencia del Tribunal de Primera Instancia que desestimó varias causas de acción presentadas por Multinational Life contra varios ex directores y oficiales que fungían en tal capacidad mientras la corporación operaba bajo el nombre de National Life Insurance Company (en adelante, "NALIC").

En esta ocasión tenemos la oportunidad de expresarnos en cuanto a la aplicabilidad de la norma en equidad establecida por el Tribunal Supremo de los Estados Unidos en el caso *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, 417 US 703 (1974), ante una acción civil instada por una corporación contra sus pasados directores y oficiales por alegados actos fraudulentos y violaciones de ley. Ello, a su vez, nos permite delimitar las diferencias entre la legitimación activa de una corporación para vindicar sus propios intereses y la legitimación activa de los accionistas para instar acciones derivativas a nombre de la corporación. Además, la controversia que hoy atendemos nos brinda la oportunidad de aclarar cuándo una corporación debe indemnizar a sus ex directores y oficiales por gastos y honorarios de abogados por pleitos instados en su contra, conforme a las disposiciones de la Ley Núm. 164-2009, conocida como Ley General de Corporaciones, 14 LPRA sec. 3501 *et seq*.

Veamos los antecedentes de hechos que dieron génesis a la controversia de autos.

I

Multinational Life comenzó a operar bajo el nombre de NALIC como una compañía aseguradora incorporada bajo las leyes del Gobierno de Puerto Rico y cuyas operaciones datan desde el año 1969. La mencionada compañía aseguradora se dedicaba a la venta de seguros de vida e incapacidad y era miembro de un grupo de aseguradoras

(*insurance holding company system*) [1] cuya compañía matriz era National Promoters & Service, Inc. (en adelante, "National Promoters"), que a su vez estaba compuesta de doce (12) empresas que eran dueñas entre sí, se prestaban servicios las unas a las otras y eran subsidiarias de un fideicomiso.

Para el 31 de diciembre de 2010, National Promoters era dueña del cuarenta y seis punto sesenta y cuatro por ciento (46.64%) de las acciones de capital de NALIC. De otra parte, la compañía aseguradora National Insurance Company (en adelante, "NIC"), quien formaba parte del grupo de aseguradoras antes mencionado, era dueña del cuarenta y ocho punto ochenta y uno por ciento (48.81%) de las acciones de capital de NALIC. El resto de las acciones de capital de NALIC pertenecían a varios directores y oficiales de dicha compañía y otras terceras personas. [2]

Tras una serie de degradaciones de la clasificación financiera de NIC por parte de la agencia acreditadora correspondiente, durante el año 2011 la Oficina del Comisionado de Seguros de Puerto Rico (en adelante, el "Comisionado de Seguros") inició un proceso de rehabilitación de NIC conforme a las disposiciones del

---

[1] La Asociación Nacional de Comisionados de Seguros define *insurance holding company system* como un grupo de dos (2) o más personas afiliadas entre sí, entre las cuales (1) o más personas se trata de una compañía aseguradora. Insurance Holding Company System Regulatory Act, Sec. 1(D).

[2] Por su parte, NALIC era dueña del dieciocho punto noventa por ciento (18.90%) de las acciones de capital de NIC, mientras que National Promoters era la dueña del restante de NIC con un total de ochenta y uno punto diez por ciento (81.10%) de las acciones de capital.

Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, que culminó en su liquidación.

El 8 de octubre de 2011, la compañía Aseguradora Ancón, S.A. (en adelante, "Ancón'), una corporación de Panamá debidamente autorizada a hacer negocios en Puerto Rico, adquirió de accionistas privados varias acciones de capital de NALIC. Posteriormente, el 2 de noviembre de 2011, Ancón adquirió del Comisionado de Seguros ciertos activos de NIC como parte del proceso de liquidación antes mencionado, los cuales incluían el cuarenta y ocho punto ochenta y uno por ciento (48.81%) de las acciones de capital de NALIC. Así las cosas, Ancón advino propietario del cincuenta por ciento (50%) de las acciones de capital de NALIC. Finalmente, el 10 de noviembre de 2011, Ancón compró el cuarenta y siete punto setenta y nueve por ciento (47.79%) de las acciones de capital de NALIC a varios accionistas privados, entre los que se encuentran las corporaciones National Promoters and Service Corporation, Eagle Star Professional Service, Inc., y CMB, Inc. Por motivo de lo anterior, Ancón se convirtió en el propietario del noventa y ocho punto ochenta y tres por ciento (98.83%) de las acciones de capital de NALIC. Es importante destacar que durante el mes de diciembre de 2011, fecha posterior a que Ancón se convirtiera en su accionista mayoritario, NALIC cambió su nombre corporativo a Multinational Life.

El 27 de marzo de 2012, Multinational Life presentó una Demanda sobre violaciones de deberes de fiducia, cobro de dinero, incumplimiento contractual y daños contra los señores Carlos M. Benítez Rivera (en adelante, "señor Benítez Rivera"), Edgardo Van Rhyn Soler (en adelante, "señor Van Rhyn Soler") y Edgar Rodríguez Gómez (en adelante, "señor Rodríguez Gómez"), quienes son ex directores y oficiales de dicha corporación mientras esta operaba bajo el nombre de NALIC. (en conjunto, los "recurridos").[3] En síntesis, Multinational Life alegó, mediante nueve (9) causas de acción, que mientras fungían como administradores de NALIC, los recurridos habían incurrido en varios actos fraudulentos y contrarios al Código de Seguros de Puerto Rico, *infra*, y otros estatutos, los cuales le continúan causando daños a la empresa al día de hoy.

Luego de varios trámites procesales, el 16 de enero de 2013, el señor Van Rhyn Soler y su esposa presentaron una Moción de Sentencia Sumaria, alegando que les asistía el derecho al adelanto o indemnización de costas, gastos y honorarios relacionados a la controversia de autos. Conforme a las alegaciones en dicha solicitud, procedía dicho adelanto o indemnización al amparo de los estatutos corporativos de Multinational Life y las disposiciones de

---

[3] También se incluyó como codemandada a la Sra. Carmen Ramírez Girona, esposa del señor Edgardo Van Rhyn Soler, así como a la Sra. Noemi Dominicci Rodríguez, esposa del señor Edgar Rodríguez Gómez. Finalmente, Chartis Insurance (AIG) fue incluida como codemandada por haber expedido pólizas de seguro a favor de los peticionarios mientras estos fungían como directores u oficiales de Multinational Life.

la Ley Núm. 164-2009, *supra*. A esta solicitud posteriormente se unieron los señores Benítez Rivera y Rodríguez Gómez. El 5 de marzo de 2013, Multinational Life presentó su oposición a que se dictara Sentencia Sumaria en cuanto a lo anterior.

Por otro lado, el 1 de abril de 2013, el señor Van Rhyn Soler y su esposa presentaron una Moción de Desestimación ante el foro primario. En síntesis, argumentaron que la norma esbozada por el Tribunal Supremo de los Estados Unidos en el caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, era aplicable a la controversia de autos, por lo que Multinational Life carecía de legitimación activa para instar una acción derivativa en contra de los pasados directores y oficiales de la corporación.[4] Ello fue objeto de una oposición por parte de Multinational Life, la cual fue presentada el 26 de julio de 2013.

El 5 de agosto de 2013, el Tribunal de Primera Instancia emitió una primera Sentencia Parcial desestimando siete (7) de las nueve (9) causas de acción de la Demanda instada por Multinational Life, en las cuales se reclama por actos anteriores a que Ancón adviniera propietaria de la empresa.[5] Entendió el foro

---

[4] También se alegó, en la alternativa, que procedía la desestimación de la Demanda debido a que no se incluyó como codemandado a la entidad Option Health Care Network, Inc., parte que alegaron ser indispensable para resolver la controversia.

[5] El foro primario desestimó la primera (1ra), segunda (2da), quinta (5ta), sexta (6ta), séptima (7ma), octava (8va) y la novena (9na) causas de acción.

primario que las mencionadas causas de acción no procedían debido a que se trataba de una acción derivativa y no se cumplían los requisitos para su procedencia. Además, estimó que era de aplicación el caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, por lo cual Multinational Life estaba impedido de entablar tales reclamaciones contra los recurridos. De otra parte, el 6 de agosto de 2013, el foro primario emitió una segunda Sentencia Parcial mediante la cual concedió la indemnización de las costas, gastos y honorarios reclamados por los recurridos.[6]

El 3 de septiembre de 2013, Multinational Life presentó Mociones de Reconsideración y de Determinaciones de Hechos y Conclusiones de Derecho Adicionales en cuanto a las dos (2) Sentencias Parciales emitidas por el foro primario. Multinational Life alegó que el foro primario se equivocó en cuanto a las conclusiones de hechos y de derecho que surgían de ambas Sentencias Parciales, así como que no era de aplicabilidad la doctrina esbozada en el caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, ya que no se trataba de una acción derivativa entablada por los accionistas de la corporación. Luego de

---

[6] Luego de emitidas las dos (2) Sentencias Parciales antes mencionadas, el señor Edgar Rodríguez Gómez presentó una Solicitud de Sentencia Sumaria bajo los mismo términos y una solicitud solicitando que se enmiende la indemnización por gastos y honorarios. Ambas fueron declaradas Con Lugar por el foro primario el 23 de octubre de 2013, desestimando así las mismas causas de acción antes mencionadas en contra del señor Edgar Rodríguez Gómez y concediéndole la indemnización de gastos y honorarios.

considerar lo anterior, el foro primario denegó las solicitudes el 23 de octubre de 2013.

Así las cosas, el 27 de noviembre de 2013, Multinational Life presentó dos (2) recursos de apelación ante el Tribunal de Apelaciones, alegando que se había equivocado el foro primario al desestimar las causas de acción y al conceder la indemnización por concepto de costas, gastos y honorarios a los recurridos.[7] El 6 de febrero de 2014, el Tribunal de Apelaciones confirmó los dictámenes del foro primario en toda su extensión. Ante una oportuna Moción de Reconsideración presentada por Multinational Life, el Tribunal de Apelaciones emitió una Sentencia Enmendada mediante la cual reconoció varios errores en la apreciación de los hechos. No obstante, el foro apelativo intermedio volvió a confirmar los dictámenes del foro primario.

Aun inconforme, el 16 de abril de 2014 Multinational Life presentó el recurso de *certiorari* que nos ocupa. Como primer señalamiento de error, Multinational Life alega que incidió el Tribunal de Apelaciones al confirmar la aplicación de la doctrina de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, y lo dispuesto en la Ley Núm. 164-2009, *supra*, en cuanto a las acciones derivativas. En la alternativa, Multinational Life alega que aun de entenderse que aplica la norma de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, a la controversia de

---

[7] Ambos recursos fueron consolidados por el Tribunal de Apelaciones.

autos, se encuentran presentes sus excepciones según estas han sido desarrolladas por la jurisprudencia. De otra parte, como segundo señalamiento de error alega que erró el foro apelativo intermedio al confirmar la Sentencia Parcial relacionada a la procedencia de la indemnización de costas, gastos y honorarios a favor de los recurridos. Finalmente, alega que no concurrieron los requisitos estatutarios y jurisprudenciales para disponer de ambas controversias por la vía sumaria.

Con el beneficio de los alegatos de ambas partes, nos encontramos en posición para resolver el recurso sin ulterior trámite.

II

A.

Es sabido que las corporaciones son entidades con personalidad jurídica propia, distinta e independiente a la de sus dueños, a los que se denominan como accionistas. C.E. Díaz Olivo, *Corporaciones*, San Juan, Pubs. Puertorriqueñas, 2005, págs. 11-12. Véase, además: *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011). Un accionista puede tratarse de un individuo que posee acciones de capital de determinada corporación. Además, nuestro ordenamiento también permite que una corporación sea accionista de otra, ya que el propio Art. 2.02(d) de la Ley Núm. 164-2009, *supra,* reconoce que una corporación ostenta la facultad para adquirir todo tipo de bienes a su nombre. 14 LPRA sec. 3522(d). Véanse, además:

Díaz Olivo, *op. cit.*, pág. 64; 4 Fletcher, Cyclopedia of the Law of Corporations, sec. 1393.[8]

A pesar de que los accionistas de una corporación son los propietarios de la misma, de ordinario estos no la dirigen ni la administran. Díaz Olivo, *op. cit.*, pág. 12. En cambio, los accionistas "seleccionan a un grupo de personas que se conocen como directores, a quienes les encomendarán la administración de la entidad". *Íd.* Los directores, a su vez, son los encargados de establecer la política de la empresa y de designar a un grupo de personas que se les denomina oficiales, siendo estos últimos los llamados a ocuparse de los asuntos diarios de la corporación. *Íd.* Al momento de llevar a cabo sus funciones de administradores de la corporación, tanto los directores como los oficiales deben cumplir con el principio básico de ejercer sus poderes corporativos y gerenciales en beneficio de los accionistas a quienes vienen llamados a responder. *Íd.*, pág. 67. Este principio general se encuentra estatuido en el Art. 2.03 de la citada Ley Núm. 164-2009, que establece que los poderes otorgados a los directores y oficiales deben ejercerse "en

---

[8] Fletcher explica la capacidad de una corporación de adquirir acciones de otra corporación de la siguiente manera:

> The power of a corporation to acquire shares in another corporation is generally governed by statute. The Model Business Corporation Act states that, unless the articles of incorporation provide otherwise, every corporation has the power to do all the things necessary or convenient to carry out its business and affairs, including the power to "purchase, receive, subscribe for, or otherwise acquire, own, hold, vote, use, sell, mortgage, lend, pledge or otherwise dispose of, and deal in and with shares or other interest in, or obligations of, any other entity." 4 Fletcher, Cyclopedia of the Law of Corporations, sec. 1393.

beneficio de los accionistas de la corporación y para la gestión prudente de sus negocios y asuntos, así como para la promoción de sus objetivos y propósitos". 14 LPRA sec. 3523. En este sentido, hemos expresado que los oficiales [y directores] corporativos tienen "la obligación de velar por los mejores intereses de la empresa". *Eastern Sands, Inc. v. Roig Comm. Bank*, 140 DPR 703, 717 (1996).

Al ejercer sus poderes gerenciales en beneficio de los accionistas, los directores y oficiales deben cumplir con ciertos *deberes de fiducia*. A su vez, los deberes de fiducia se dividen entre el *deber de diligencia* y el *deber de lealtad*. Díaz Olivo, *op. cit.*, pág. 103. Para propósitos de la controversia que hoy tenemos ante nuestra consideración, basta con recordar que el deber de diligencia lo encontramos en el Art. 4.03 de la Ley Núm. 164-2009, *supra,* y se refiere a la atención y el cuidado que en una posición similar y ante circunstancias análogas debería exhibir un director u oficial responsable y competente al ejercer de buena fe su juicio comercial. 14 LPRA sec. 3563. *Véase* Díaz Olivo, *op. cit.*, pág. 105. Por otro lado, el deber de lealtad implica que los administradores habrán de llevar a cabo sus funciones para el beneficio de la corporación y no para su beneficio personal. *Íd.*, pág. 117. En cuanto a ello, el Art. 4.04 de la Ley Núm. 164-2009 dispone que los directores y oficiales "cuando tengan intereses personales en asuntos que afecten la corporación, estarán sujetos al deber de

lealtad que les obliga a actuar de forma justa en relación con los asuntos corporativos". 14 LPRA sec. 3564.

B.

Cuando los directores u oficiales incumplen con las obligaciones impuestas por los deberes de fiducia que les han sido encomendados, estos podrían ser responsables civilmente por sus actuaciones ante la corporación que administran. Díaz Olivo, *op. cit.*, pág. 102.

Por un lado, y como corolario de la personalidad jurídica propia que ostentan, una corporación tiene capacidad para demandar y ser demandada. Art. 2.02(b) de la Ley Núm. 164-2009, 14 LPRA sec. 3522(b). Véase Díaz Olivo, *op. cit.*, pág. 63. Por tal motivo, una corporación tiene legitimación activa para entablar una acción civil para resarcir daños ocasionados por terceros, incluyendo pasados directores y oficiales de la corporación que incumplen con los deberes de fiducia. 9A Fletcher, op. cit., sec. 4471 ("A corporation may bring an action against its officers, agents or members in the same manner as other individuals").[9]

De otra parte, existen situaciones en las cuales los accionistas -ya sea un individuo o una corporación actuando como accionista de otra entidad jurídica- desean llevar acciones civiles a nombre de la corporación en la

---

[9] Sobre este asunto, Fletcher explica que "[a]n existing corporation may sue its officers for breach of contract for mismanagement, negligence and breach of trust resulting in a loss to the corporation, where it is not precluded by laches or estoppel". 3A Fletcher, op. cit., sec. 1276.

cual poseen un interés propietario. A este tipo de reclamación se le conoce como una *acción derivativa* y se puede definir como una reclamación judicial de una causa de acción propia de la corporación que es iniciada por sus accionistas, en casos en los que la propia corporación falla en reclamar sus derechos contra aquellas personas que, ya sean externas o internas, le han causado un daño a la entidad. Díaz Olivo, *op. cit.*, pág. 276. En otras palabras, se trata de una acción en equidad promovida por los accionistas en representación de la corporación, con el propósito de vindicar los intereses de ésta. *Íd.*, pág. 278. Por tal motivo, cualquier remedio o recobro monetario que se logre a través de una acción derivativa le pertenece a la corporación y no a los accionistas que la promovieron. *Íd.*, pág. 276. De ordinario, "los pleitos de naturaleza derivativa son básicamente pleitos fundamentados en violaciones a los deberes de fiduciarios de lealtad y diligencia por parte de los administradores de la corporación". *Íd.*, pág. 277.

El Art. 12.06 de la Ley Núm. 164-2009 es el estatuto que codifica lo relativo a las acciones derivativas en nuestra jurisdicción y dispone lo siguiente:

> En cualquier pleito entablado por un accionista a beneficio de alguna corporación organizada con arreglo a las leyes del Estado Libre Asociado, **deberá alegarse en la demanda que el demandante era accionista de la corporación cuando se efectuó la transacción impugnada, o que las acciones le fueron transferidas luego de la transacción por ministerio de ley**. 14 LPRA sec. 3786 (Énfasis nuestro).

Como se desprende de la sección de ley citada, para que proceda una acción derivativa es necesario que el accionista que la promueve haya sido accionista al momento en que ocurrieron los hechos sobre los cuales reclama una causa de acción, o que las acciones le hayan sido transferidas en una fecha posterior por ministerio de ley. [10] Este requisito es lo que se conoce como el *contemporaneous ownership rule* [11] o regla de contemporaneidad y su propósito original era "evitar la compra de acciones con la intención de crear la diversidad en ciudadanía y así establecer una base para la jurisdicción federal", sin embargo, hoy día se utiliza para eliminar lo que conocemos como *strike suits*. [12] Díaz

---

[10] A pesar de que para efectos de la controversia de autos únicamente es pertinente discutir el mencionado requisito de contemporaneidad, el profesor Díaz Olivo explica que los requisitos para que un accionista pueda instar una acción derivativa son los siguientes:

> (1) la corporación debe incluirse como parte demandada; (2) la persona que insta la acción debe haber sido accionista al momento en que ocurrió el daño que reclama, y durante todo el procedimiento; (3) antes de acudir al tribunal, el accionista debe reclamar a los administradores de la corporación que tomen acción sobre el particular; (4) por tratarse de una acción en equidad, el accionista está sujeto a las defensas tradicionales de equidad, como manos limpias, impedimento, incuria y renuncia, entre otras, y (5) el pleito no debe transigirse ni desistirse sin la autorización del tribunal. Díaz Olivo, *op. cit.*, pág. 279.

Explica además que, en el caso de una acción derivativa ante los tribunales federales, "el accionista deberá establecer que representa real y adecuadamente los intereses de los accionistas". *Id.* Véase la Regla 23.1 de las Reglas de Procedimiento Civil Federal.

[11] Véase 13 Fletcher, *op. cit.*, sec. 5981 ("The contemporaneous ownership rule in most state corporation statutes provides that a shareholder may commence or maintain a derivative proceeding only if the shareholder owned shares at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time").

[12] Un *strike suit* ocurre cuando una parte compra acciones de una corporación para propósitos litigiosos. 13 Fletcher, *op. cit.*, sec. 5981.10.

Olivo, *op. cit.*, pág. 279. En el ámbito federal, este requisito lo podemos encontrar en la Regla 23.1(b)(1) de las Reglas de Procedimiento Civil Federal.

Con estos principios del Derecho Corporativo en mente, pasemos a discutir la jurisprudencia federal que sirvió como fundamento para desestimar las causas de acción de la controversia de epígrafe.

C.

Según anticipamos, la mayoría de las causas de acción que forman parte del pleito de epígrafe fueron desestimadas utilizando como fundamento lo resuelto por el Tribunal Supremo de los Estados Unidos en el caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*. Por tal motivo, nos corresponde analizar minuciosamente las expresiones del Máximo Foro federal para, en primer lugar, determinar en qué circunstancias aplica la norma en equidad allí establecida.

En el citado caso, *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, a través de su subsidiaria Bangor Punta Operations, Inc. (en conjunto, "Bangor"), adquirió el noventa y ocho punto tres por ciento (98.3%) de Bangor & Aroostock Railroad Co. (en adelante, "BAR") en el año 1964. *Íd.*, pág. 705-706. Luego de varios años en los cuales ejerció el control de la empresa, durante el año 1969 Bangor vendió la totalidad de sus acciones de BAR a Amoskeag Co. (en adelante, "Amoskeag"), siendo ésta última entidad quien pasó a ser la administradora de BAR. *Íd.*,

pág. 706. Posteriormente, Amoskeag adquirió acciones adicionales de BAR, convirtiéndose en el propietario de más del noventa y nueve por ciento (99%) de las acciones de dicha entidad. *Íd.*

En el 1971, BAR y una subsidiaria presentaron una acción civil contra Bangor ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Maine. *Íd.* El pleito consistía de trece (13) causas de acción mediante las cuales se alegó violaciones a varios estatutos federales y estatales y además se alegaba el mal manejo, la apropiación indebida y el desperdicio de los activos corporativos de BAR entre el 1960 y el 1967, periodo en el cual Bangor controlaba BAR. *Íd.* En síntesis, BAR alegó que mientras estuvo controlada por Bangor, ésta (1) se aprovechó de su condición de administrador con el único propósito de adelantar sus propios intereses, y (2) drenó los recursos de BAR en violación a la ley y para su propio beneficio. *Íd.*, pág. 707.

A petición de Bangor, el Tribunal de Distrito desestimó todas las causas de acción por la vía sumaria. *Íd.* Entendió el foro primario federal que aunque la acción fue promovida como una acción directa de BAR, el verdadero beneficiario de cualquier remedio lo hubiese sido Amoskeag, quien había adquirido virtualmente el total control de BAR mucho después de las alegados actos fraudulentos cometidos por Bangor. *Íd.* El Tribunal de Distrito notó además que no estaba en controversia si

Amoskeag había recibido un valor justo por las acciones compradas en relación al precio pagado por ellas, así como tampoco habían alegaciones de que la compraventa de acciones hubiese estado viciada por fraude o engaño. *Íd.*, págs. 707-708. Así las cosas, entendió que cualquier remedio monetario a favor de Amoskeag constituiría una ganancia indebida. *Íd.*, pág. 708. Acto seguido, el Tribunal de Distrito sentenció que Amoskeag tampoco podría entablar el pleito como una acción derivativa, pues no cumplía con la regla de contemporaneidad según exigido por la Regla 23.1 de las Reglas de Procedimiento Civil Federal y el derecho estatal de Maine. *Íd.*, págs. 708-709.

BAR acudió al Tribunal de Apelaciones de los Estados Unidos para el Primer Circuito, quien revocó el dictamen del Tribunal de Distrito. *Íd.*, pág. 709. El Primer Circuito entendió, *inter alia*, que debido a que se trata de una compañía de ferrocarriles, Amoskeag no iba a ser el único beneficiario de la acción promovida, sino que el público en general se beneficiaría de permitir que procediera el pleito contra Bangor. *Íd.* Conforme al foro apelativo federal, proteger y fomentar la sana administración de los servicios públicos era más importante que cualquier ganancia indebida por parte de Amoskeag, ello a pesar de estar consciente de que existía la posibilidad de que cualquier recobro monetario se utilizara para el beneficio de Amoskeag en lugar de ser reinvertido para el disfrute del público en general. *Íd.*

Inconforme con ello, Bangor acudió al Tribunal Supremo de los Estados Unidos, quien revocó el dictamen del Primer Circuito. Explicó la más Alta Curia federal que lo que estaba en controversia era "la aplicabilidad del principio en equidad establecido de que un accionista no puede reclamar sobre actos de mala administración corporativa **si adquirió sus acciones de capital de aquellos que participaron de o consintieron a los actos alegadamente impropios**". *Íd.*, pág. 710 (Traducción y énfasis nuestro y citas omitidas). Añadió que este principio ha sido aplicado con mayor fuerza cuando un accionista compra todas o sustancialmente todas las acciones de capital de una corporación de un vendedor a un precio justo, y posteriormente utiliza la corporación adquirida para recobrar **del vendedor** por alegados actos de mala administración. *Íd.* (Énfasis nuestro y citas omitidas).[13]

Luego de discutir los principios antes mencionados, el Tribunal Supremo de los Estados Unidos coincidió con el Tribunal de Distrito en cuanto a que Amoskeag, como

---

[13] En *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, 417 US 703, 710-711 (1974), el Tribunal Supremo de los Estados Unidos enfatizó lo resuelto por el Tribunal Supremo de Nebraska en *Home Fire Insurance Co. v. Barber*, 67 Neb. 644, 93 N.W. 1024 (Neb. 1903). En ese caso, el Tribunal Supremo de Nebraska entendió que los accionistas de la corporación demandante no habían sufrido daño alguno. Ello debido a que habían adquirido sus acciones de las personas que alegadamente habían incurrido en la mala administración de la corporación con posterioridad a la ocurrencia de las transacciones en controversia, y habían obtenido un precio justo. Así las cosas, cualquier recobro de dinero por parte de los accionistas hubiese constituido una ganancia indebida, ya que les permitiría recobrar una gran parte del precio que acordaron pagar por las acciones de la corporación a pesar de que al negociar ese precio conocían de los alegados actos de mala administración. Además, equivaldría a permitir que los accionistas se lucrasen por motivo de daños causados a otras personas.

propietario de más del noventa y nueve por ciento (99%) de las acciones de capital de BAR, sería el verdadero beneficiario de la sentencia que en su día pudiera dictarse a favor de BAR. *Íd.*, pág. 711. De igual manera, coincidió con la apreciación de que las acciones de capital fueron adquiridas por Amoskeag en una fecha lejana a los actos alegadamente impropios. *Íd.* El Máximo Foro federal puntualizó que Amoskeag **nunca alegó que hubiera mediado fraude o engaño en la transacción** de compraventa de acciones, así como tampoco alegó que el valor de las acciones compradas fuera menor que el precio pagado. *Íd.* Consideró importante el hecho de que tampoco se alegó que Amoskeag hubiese sufrido daño alguno, **ni que las actuaciones corporativas alegadamente impropias tuviesen un efecto continuado en BAR o en el valor de sus acciones de capital.** *Íd.* Así las cosas, entendió que lo que en realidad sucedió en este caso es que Amoskeag, a través de BAR, lo que en realidad pretendía cobrar eran daños que Bangor se había ocasionado a sí mismo mientras era dueña y administradora de BAR, lo que constituiría una ganancia indebida. *Íd.*, pág. 712. Tomando en cuenta todo lo anterior, el Tribunal Supremo de los Estados Unidos resolvió que Amoskeag no tendría legitimación activa sostener su reclamación. *Íd.*

Ahora bien, debido a que las causas de acción en controversia estaban siendo promovidas por la propia corporación, entiéndase BAR, quedaba por resolver si los

tribunales podían obviar la ficción corporativa de BAR e imputarle las causas de acción a Amoskeag. El Tribunal Supremo de los Estados Unidos resolvió en la afirmativa y dispuso que "aunque una corporación y sus accionistas se consideran entidades separadas en la mayoría de los casos, la forma corporativa puede ser ignorada en el interés de la justicia cuando está siendo utilizada para derrotar una firme política pública". *Íd.*, pág. 713 (Énfasis nuestro y citas omitidas). Añadió que, en estos casos, se debe descorrer el velo corporativo y atender la sustancia de la acción, en lugar de adherirse a las formalidades corporativas ciegamente. *Íd.* Por lo tanto, "cuando como cuestión de equidad los accionistas estén imposibilitados de mantener una acción por derecho propio, la corporación también estará imposibilitada". *Íd.* Así las cosas, el Tribunal Supremo de los Estados Unidos concluyó que debido a que Amoskeag sería el verdadero beneficiario de cualquier remedio y está impedida de reclamar por cuenta propia, no puede utilizar la forma corporativa de BAR para recobrar a lo que no tendría derecho de haber entablado una acción directa. *Íd.*[14] Finalmente, reconoció que avalar

---

[14] En cuanto a las causas de acción basadas en las leyes estatales de Maine, el Tribunal Supremo de los Estados Unidos resolvió que tampoco podía sostenerse la reclamación, ya que en dicho estado se había resuelto recientemente que un accionista no tiene legitimación activa si él o el vendedor participó o consintió a los actos alegadamente impropios. *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, pág. 714; *Forbes v. Wells Beach Casino, Inc.*, 307 A.2d 210, 223 n. 10 (Me. 1973). Igualmente, Amoskeag tampoco podía llevar el pleito, ya que en Maine estaba reconocido el principio de que se puede obviar la ficción corporativa cuando sea necesario en equidad. *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, pág. 714; *Bonnar-Vawter, Inc. v. Johnson*, 173 A.2d 141, 145 (Me. 1961).

lo resuelto por el Primer Circuito constituiría un enriquecimiento injusto por parte de Amoskeag, quien no había sufrido daño alguno. *Íd.*, pág. 715.

El caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*,[15] ha sido interpretado por un gran número de tribunales estatales y federales. No obstante, debido a que nuestros estatutos corporativos se basan en la Ley General de Corporaciones de Delaware, 8 Del. C. sec. 101 *et seq.*, la jurisprudencia de los tribunales de Delaware es altamente persuasiva en nuestra jurisdicción. Véase la Exposición de Motivos de la Ley Núm. 164-2009, *supra*.

Así las cosas, resulta meritorio destacar que en Delaware se ha reconocido la norma de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*. Tan cercano como el año siguiente de la decisión del Tribunal Supremo de los Estados Unidos, la Corte de Cancillería de Delaware la citó con aprobación en *Courtland Manor, Inc. v. Leeds*

---

[15] En la Opinión Disidente del caso se explicó, *inter alia*, que a pesar de que durante el periodo en controversia la gran mayoría de las acciones pertenecieron a Bangor y luego a Amoskeag, también existían accionistas minoritarios que mantuvieron tal condición durante todo el periodo y que hubiesen tenido derecho a reclamarle a la corporación mediante una acción derivativa. Así las cosas, debido a que estos accionistas minoritarios tenían legitimación activa para llevar el pleito, no procedía la desestimación de la demanda por el mero hecho de que Amoskeag era el accionista mayoritario. *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, pág. 722 (Op. Disidente del Juez Marshall)("It is ironic, then, to see the Court adopt a result which bars the corporation itself from bringing a suit which a minority shareholder could have brought in the corporation's behalf"). La Opinión Disidente también destacó que Amoskeag sí pudo haber sufrido un daño, ya que de la demanda no surge que este tuviera conocimiento de los alegados actos impropios hasta después de consumada la compraventa. *Íd.*, págs. 723-724. Además, entendió que los tribunales pueden ordenar los remedios en equidad que sean necesarios para que los dineros recuperados mediante la demanda sean reinvertidos en BAR para el beneficio de la propia corporación, sus accionistas, acreedores y el público en general, evitando así un enriquecimiento injusto por parte de Amoskeag. *Íd.*, págs. 724-725.

347 A.2d 144 (Del. Ch. 1975). Posteriormente, aunque negó aplicarla a los hechos particulares ante su consideración, el Tribunal Supremo de Delaware reconoció que la norma de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, estaba vigente en esa jurisdicción. *Lewis v. Anderson*, 477 A.2d 1040, 1050-1051 (Del. 1984) (Citando a *Courtland Manor, Inc. v. Leeds*, *supra*). Luego, en *Midland Food Services, LLC v. Castle Hill Holdings V, LLC*, 792 A.2d 920 (Del Ch. 1999), la Corte de Cancillería aplicó la norma y expresó que

> La doctrina de Bangor Punta asegura que un comprador que obtiene un interés mayoritario sobre una corporación, con posterioridad a que posibles reclamaciones surgieran **en contra de las personas de las cuales el comprador adquirió sus acciones**, no puede utilizar su control sobre la maquinaria corporativa para obligar a la corporación a reclamar las causas de acción directamente. *Íd.*, pág. 929 (Traducción y énfasis nuestro).

De la discusión anterior surgen varios extremos que son relevantes para resolver la controversia de autos. Primero, *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, es de aplicación a aquellas controversias en donde el comprador de las acciones le reclama al vendedor por alegados actos de mala administración que ocurrieron previo a la compraventa de acciones. De la jurisprudencia citada se puede observar que en todos los casos en donde se aplicó la doctrina se trataba de una acción en contra de aquellos que les habían vendido las acciones, independientemente de que hayan formado parte de la gerencia de la corporación. La Corte de Cancillería de

Delaware lo resumió de la siguiente manera en *Midland Food Services, LLC v. Castle Hill Holdings V, LLC*, *supra*, pág. 930: "**the purpose of the [Bangor Punta] Doctrine ... is to prevent persons from being able to re-trade arms-length transactions by using the corporation to sue the parties from whom they obtained their shares**". (Énfasis nuestro). Además, en *Lerman v. Joyce Intern, Inc.*, 10 F.3d 106, 111 (3er Cir. 1993), el Tribunal de Apelaciones de los Estados Unidos para el Tercer Circuito reconoció que la norma únicamente aplica cuando el comprador de las acciones le reclama al vendedor. A igual conclusión llegó el Quinto Circuito en *Federal Sav. and Loan Ins. Corp. v. Reeves*, 815 F.2d 130, 133 (5to Cir. 1987); el Décimo Circuito en *Noland v. Barton*, 741 F.2d 315, 317 (10mo Cir. 1984), y el Séptimo Circuito en *Rock River Sav. and Loan Ass'n v. American States Ins. Co.*, 594 F.2d 633, 635 (7mo Cir. 1979).

Segundo, un accionista no puede valerse de la ficción corporativa para reclamar, a modo de una acción derivativa, lo que no podría reclamar mediante una acción directa contra el vendedor de las acciones, evitando así la aplicación de lo esbozado en *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, por lo que en tales casos procede descorrer el velo corporativo. Véase *First Nat. City Bank v. Banco para el Comercio Exterior de Cuba*, 462 US 611, 629-630 (1983) ("We decline to adhere blindly to the corporate form where doing so would cause such an

injustice") (Citando a *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, pág. 713); *Noland v. Barton*, *supra*, pág. 317; *Courtland Manor, Inc. v. Leeds*, *supra*, págs. 147-148.

Tercero, existen excepciones a la norma de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*. Una de ellas es cuando se reclama la existencia de fraude o engaño en cuanto a los actos alegadamente impropios. Como expresó la Corte de Cancillería en *Midland Food Services LLC v. Castle Hill Holdings V, LLC*, *supra*, pág. 933,

> [T]he Bangor Punta Doctrine does not prevent a party who obtained control of a corporation from a seller from asserting a claim that the sales agreement should be rescinded because the seller defrauded or otherwise wrongfully induced the purchaser to execute the agreement.

Otra excepción a la doctrina es cuando se alega que el daño causado es uno continuo.[16] *Noland v. Barton*, *supra*, pág. 318.

### D.

Debido a que los tribunales recurridos resolvieron a favor de conceder la indemnización por concepto de costas, gastos y honorarios a los recurridos, para resolver la controversia de autos también es necesario que nos expresemos en cuanto a cuándo procede tal indemnización por parte de una corporación.

---

[16] No obstante, aclaramos que los tribunales de Delaware no reconocen la excepción del daño continuo. *Midland Food Services LLC v. Castle Hill Holdings V, LLC*, 792 A.2d 920, 932 (Del. Ch. 1999).

Existen situaciones en las cuales los directores y oficiales de una corporación podrían ser indemnizados por los gastos que conllevan las demandas y reclamaciones en su contra que sean instadas directamente por la corporación o mediante una acción derivativa, por razón de las actuaciones y decisiones que toman en cuanto a los asuntos corporativos que manejan. Díaz Olivo, *op. cit.*, págs. 139-140. En su obra, el profesor Díaz Olivo explica el propósito de la indemnización de los oficiales y directores de una corporación:

> [Se trata] de incentivar a que personas competentes sirvan como oficiales y directores, con la confianza y libertad de que en el desempeño de sus funciones podrán tomar aquellos riesgos e iniciativas que entiendan pertinentes en la búsqueda del bienestar corporativo, sin temer a las repercusiones de tales acciones sobre su persona. Así también, se intenta estimular a los funcionarios corporativos para que resistan y combatan aquellos pleitos y reclamaciones que consideren improcedentes o injustos, con la seguridad de que los gastos en que razonablemente incurran serán cubiertos por la corporación. *Íd.*, pág. 140.

El Art. 4.08 de la Ley Núm. 164-2009, 14 LPRA sec. 3568, es el estatuto que gobierna lo relacionado a tales indemnizaciones. El profesor Díaz Olivo explica que el mismo

> [E]stablece los parámetros mínimos dentro de los cuales la corporación podrá indemnizar a los funcionarios o agentes por los gastos en que estos incurran al defenderse en procedimientos en su contra como resultado de la posición corporativa que ocupan y por las decisiones que toman en tal capacidad. Díaz Olivo, *op. cit.*, pág. 140.

Nuestro estatuto es similar a la Sec. 145 de la Ley General de Corporaciones de Delaware, 8 Del. C. sec. 145. A pesar de que existen algunas diferencias debido a que en Delaware se ha enmendado dicha disposición legal en varias ocasiones con posterioridad a la aprobación de nuestro estatuto local, lo pertinente a la controversia de autos es virtualmente idéntico en ambas jurisdicciones. Específicamente, el Art. 4.08(b) de la Ley Núm. 164-2009 dispone lo siguiente:

> Una corporación podrá indemnizar a cualquier persona que sea, haya sido o esté bajo amenaza de convertirse en parte en cualquier acción o pleito inminente, pendiente o resuelto, instado por la corporación o instado para proteger los intereses de la corporación para conseguir una sentencia a favor de ella por razón de que la persona sea o haya sido director, oficial, empleado o agente de la corporación, o que esté o hubiese estado en funciones a petición de la corporación como director, oficial, empleado o agente de otra corporación, sociedad, empresa común *joint venture*, fideicomiso o cualquier otra empresa. 14 LPRA sec. 3568(b).

Como se puede observar, esta disposición legal aplica a las acciones contra los directores y oficiales que la corporación insta en su contra de manera directa, así como a las acciones derivativas instadas por los accionistas de la corporación.[17] La indemnización a la que se refiere el Art. 4.08(b) incluye los gastos razonables en los que se hubieran incurrido tales como costas, gastos y honorarios de abogados. *Íd.* Además, no cabe duda de que esta

---

[17] *A contrario sensu,* el Art. 4.08(a) de la Ley Núm. 164-2009 dispone lo relacionado a acciones contra directores y oficiales que son instadas por terceros ajenos a la corporación. 14 LPRA sec. 3568(a).

disposición aplica a ex directores y oficiales de la corporación. No obstante, el Art. 4.08(b) es enfático al expresar que la indemnización solo habrá de proceder si el director u oficial "actuó de buena fe y de manera que entendiera razonablemente cónsona con los mejores intereses de la corporación y no opuestos a ellos". *Íd.* Además, es claro en cuanto a que "no se efectuará ninguna indemnización con respecto a la reclamación" en aquellos casos en los que "se haya determinado que tal persona es responsable ante la corporación". *Íd.* Sin embargo, el mismo estatuto establece una excepción a lo anterior:

> [M]ediante solicitud al efecto, el tribunal que entienda en tal acción o pleito determinare que, a pesar de la adjudicación de responsabilidad en contra y en vista de todas las circunstancias del caso, tal persona tiene derecho justo y razonable a ser indemnizada por los gastos que el tribunal determine adecuados y sólo en la medida que dicho tribunal determine". *Íd.*

Por su parte, el Art. 4.08(c) de la Ley Núm. 164-2009 añade que cuando el director u oficial hubiese prevalecido en el pleito, "se le indemnizará por los gastos razonables incurridos (incluso los honorarios de abogados) por razón de dicha acción, pleito o procedimiento". 14 LPRA sec. 3568(c). Es decir, una vez el director u oficial prevalece en el pleito de manera final y firme, la corporación tiene la obligación de indemnizarlo por los gastos razonables en los que hubiese incurrido por motivo del pleito. *Díaz Olivo, op. cit.*, pág. 143.

También existen circunstancias en las cuales una corporación puede adelantar el pago de la indemnización a

los directores y oficiales. El Art. 4.08(e) de la Ley Núm. 164-2009 dispone que antes de la resolución final del pleito

> "[L]a corporación **podrá** pagar por adelantado los gastos incurridos por un oficial o director por razón de la defensa de tal acción, luego de obtener compromiso de pago de parte o nombre de tal director u oficial de que habrá de devolver tal suma si se determina finalmente que no tiene derecho a tal indemnización por parte de la corporación". 14 LPRA sec. 3568(e) (Énfasis nuestro).

Como se puede observar del texto citado, la corporación no está obligada a adelantar el pago de la indemnización, sino que tiene discreción para adelantar el pago correspondiente siempre y cuando el director u oficial se obligue a reembolsar la cantidad pagada en caso de que no prevalezca en la acción instada en su contra.

Otro aspecto sumamente importante de la indemnización a oficiales y directores de una corporación por los pleitos instados en su contra surge del Art. 4.08(f) de la Ley Núm. 164-2009:

> **No se entenderá que la indemnización y adelanto de gastos que se dispone en esta sección excluye cualquier otro derecho que aquéllos que solicitan la indemnización o adelanto puedan tener al amparo de cualquier estatuto, acuerdo, voto de accionistas o directores no interesados o de cualquier otro modo** respecto a sus actuaciones, tanto en su capacidad oficial como en otra capacidad, mientras se hallaban en funciones de tal cargo. 14 LPRA sec. 3568(f) (Énfasis nuestro).[18]

---

[18] En cuanto a su versión homóloga en Delaware, dicha sección fue enmendada en el año 2009 para añadir que, en caso de que un director u oficial tenga derechos adicionales en cuanto a la indemnización o su adelanto por virtud del certificado de incorporación o los estatutos corporativos, la corporación no puede enmendarlos para eliminar tales derechos de manera retroactiva, a no ser que dicha autorización surja

En otras palabras, los derechos que impone el Art. 4.08 de la Ley Núm. 164, *supra*, a favor de los directores y oficiales de una corporación pueden ser extendidos más allá de lo dispuesto en la ley e incluso restringidos por virtud de los estatutos corporativos, voto de accionistas o directores no interesados, o cualquier tipo de acuerdo entre las partes. Díaz Olivo, *supra*, pág. 141. A igual resultado llegó el Tribunal Supremo de Delaware al interpretar la Sec. 145(f) de la Ley General de Corporaciones de Delaware, 8 Del. C. 145(f). *Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del. 1983) ("The corporation can also grant indemnification rights beyond those provided by the statute"). Además, en cuanto al adelanto de los gastos por concepto de indemnización, recientemente la Corte de Cancillería reiteró la norma vigente en Delaware y expresó que

> As this Court has held, "**[w]hen a corporation agrees to make mandatory the permissive authority to provide advancement and indemnification conferred by Sections 145(a), (b), and (e) of the General Corporation Law, the corporation confers a contractual fee-shifting right on the covered person**". *Pontone v. Milso Industries, Corp.*, 100 A.3d 1023, 1039 (Del. Ch. 2014) (Citando a *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 996 (Del. Ch. 2012). Véase, además: *Stifel Financial Corp. v. Cochran*, 809 A.2d 555, 559 (Del. 2002)

Finalmente, el Art. 4.08(k) de la Ley Núm. 164-2009, *supra*, le concede autoridad a los tribunales para atender cualquier controversia en relación al adelanto de gastos e

---

del propio certificado de incorporación o los estatutos corporativos. Véase 8 Del C. sec. 145(f).

indemnización según dispuesto en la ley o en los estatutos corporativos o demás documentos y contratos corporativos que incidan sobre tal derecho. 14 LPRA sec. 3568(k). La determinación que haga el tribunal a favor del adelanto de gastos a los directores y oficiales podrá realizarse sumariamente y podrá incluir los honorarios de abogado. *Íd.*

Por lo tanto, al momento de evaluar los derechos que le asisten a un director u oficial de una corporación en cuanto a la indemnización o adelanto de gastos se refiere, es preciso que evaluemos la ley junto a los hechos particulares de casa caso y los documentos corporativos que pudieran modificar, extender o restringir lo dispuesto en la ley. Al momento de evaluar los mismos, debemos recordar que al analizar e interpretar los estatutos corporativos y demás documentos debemos utilizar los mismos principios aplicables a la interpretación de las leyes y los contratos. *Hibbert v. Hollywood Park, Inc.*, *supra*, págs. 342-343 (Del. 1983); *Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1007 (Del. Ch. 2010); 8 Fletcher, *op. cit.*, sec. 4195.

III

A.

Nos corresponde resolver si procedía la desestimación de siete (7) de las nueve (9) causas de acción de la Demanda, relacionadas a las alegaciones de violaciones a deberes de fiducia, fraude y mal manejo de fondos

corporativos por parte de los recurridos cuando estos eran directores y oficiales de NALIC, ahora Multinational Life, previo a que Ancón adquiriese la empresa. Según adelantamos, el Tribunal de Apelaciones confirmó el dictamen desestimatorio emitido por el Tribunal de Primera Instancia debido a que entendió que la peticionaria no cumplía con la regla de contemporaneidad dispuesta en el Art. 12.06 de la Ley Núm. 164-2009, *supra*, y lo resuelto por el Tribunal Supremo de los Estados Unidos en el caso *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*. Luego de un análisis ponderado de los hechos alegados en la Demanda a la luz del derecho aplicable a la controversia de autos, es forzoso concluir que los tribunales recurridos se equivocaron al desestimar las causas de acción. Como veremos a continuación, el caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, es distinguible y claramente inaplicable a la controversia ante nuestra consideración.

En primer lugar, en *Bangor Punta Operations, Inc. v. Bangor & A.R. Co.*, *supra*, el Máximo Foro federal resolvió que, como cuestión de equidad, un comprador no podía reclamarle al vendedor de las acciones –que en ese caso también se trataba del administrador de la corporación vendida– por alegados actos de mala administración que ocurrieron previo a la compraventa. Esto no ocurrió en la controversia de autos, ya que Multinational no instó un pleito contra quienes le vendieron las acciones, sino

contra sus pasados ex directores y oficiales mientras esta operaba bajo el nombre de NALIC. En otras palabras, debido a que no se trata de una acción en donde el comprador de las acciones demanda al vendedor de las mismas por actos de mala administración que ocurrieron con anterioridad a la venta, la doctrina de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, es palpablemente inaplicable a la controversia de autos.

El otro asunto que resolvió el Tribunal Supremo de los Estados Unidos en el caso de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, es que el comprador de las acciones -quien sería el verdadero beneficiario de la acción promovida- no puede cobijarse detrás de las formalidades corporativas y utilizar a la corporación que ahora controla para que ésta inste una acción directa contra quienes le vendieron las acciones. En estos casos, procede descorrer el velo corporativo y evaluar si el accionista podría llevar la acción por sí mismo. Aun si determináramos que en efecto Ancón, como accionista mayoritario, es el verdadero beneficiario de la acción promovida por Multinational Life y descorriéramos el velo corporativo, dicha determinación resultaría irrelevante para resolver la controversia de autos. Ello debido a que, como ya mencionamos, la norma en equidad esbozada en *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, aplica a situaciones en las cuales el comprador de las

acciones demanda a los vendedores, cosa que no ocurrió en el presente caso.

Por otro lado e *in arguendo*, aún bajo el supuesto de que la norma de *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, aplicase a la controversia de autos, es evidente que estarían presentes las excepciones admitidas por la jurisprudencia. En la totalidad de las causas de acción que fueron desestimadas por los tribunales recurridos se alega fraude y daños continuados, dos (2) de las excepciones reconocidas en *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*, y la jurisprudencia emitida posteriormente.

En este caso, lo que realmente tenemos ante nos es un caso en donde Multinational Life le está reclamando a sus pasados directores y oficiales por alegadas transacciones consistentes en fraude y violaciones de ley mientras esta operaba bajo el nombre de NALIC. Recordemos que, en el Derecho Corporativo, el cambio de nombre no afecta los derechos que le asistían a una corporación previo al cambio: "[c]hange of the corporate name ordinarily has no effect on the corporation's identity or on the rights of action or defenses that pertain to it. A corporation may maintain an action on a cause of action that arose prior to the change of name". 9 Fletcher, *op. cit.*, sec. 4242. Contrario a lo que resolvió el foro *a quo,* no era necesario que Multinational cumpliera con la regla de contemporaneidad dispuesta en el Art. 12.06 de la Ley Núm.

164-2009, *supra,* y con los resuelto por el Tribunal Supremo de los Estados Unidos en *Bangor Punta Operations, Inc. v. Bangor & A.R. Co., supra*. Ello debido a que, conforme hemos discutido, no estamos ante una acción derivativa, sino una acción *directa* instada por Multinational contra sus ex directores y oficiales.

Por otro lado, resulta pertinente aclarar que no estamos pasando juicio sobre los méritos de las alegaciones de Multinational Life contra los recurridos. Estas deberán ser evaluadas en su día por el Tribunal de Primera Instancia, quien deberá aquilatar la prueba ante su consideración para determinar si las actuaciones de los ex directores y oficiales fueron en efecto contrarias a los deberes de fiducia o fraudulentas. Lo que ciertamente no procede es desestimar las causas de acción de Multinational Life apoyándose en una teoría que es inaplicable a la controversia de autos. Ciertamente, ante la controversia de hechos materiales relacionados a si los pasados directores y oficiales de Multinational Life violaron los deberes de fiducia o cometieron fraude, es inapropiado desestimar las causas de acción de la peticionaria. Máxime cuando sabido es que una Demanda no debe ser desestimada, a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008). Por

consiguiente, cuando el tribunal tiene ante su consideración una Moción de Desestimación, debe tomar como ciertos todos los hechos bien alegados en la Demanda. *Íd.* pág. 428.

Por todo lo anterior, resolvemos que erró el Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia en donde este desestimó siete (7) de las nueve (9) causas de acción de la Demanda instada por Multinational Life en contra de los recurridos. Así las cosas, procede que devolvamos el caso al Tribunal de Primera Instancia y ordenemos la continuación de los procedimientos en cuanto a la totalidad de las causas de acción reclamadas por Multinational Life en el pleito de epígrafe.

B.

Queda por resolver si actuó correctamente el Tribunal de Apelaciones al confirmar al foro primario en cuanto a la procedencia de la indemnización por concepto de costas, gastos y honorarios de abogado a favor de los recurridos por la acción instada por la corporación en su contra, según permitido por el Art. 4.08(b) de la Ley Núm. 164-2009, *supra*.

Habiendo ya resuelto que no procede la desestimación de las causas de acción objeto del presente recurso, tampoco procede la indemnización por costas, gastos y honorarios de abogados al amparo del Art. 4.08(c) de la Ley Núm. 164-2009, *supra*, que dispone que la indemnización

habrá de proceder cuando los directores y oficiales demandados ganen el pleito instado en su contra. Tampoco cabe hablar del adelanto de la indemnización conforme al Art. 4.08(e), el cual es discrecional de la corporación, pues está claro que Multinational Life no tiene interés alguno en conceder un adelanto.

Por otro lado, según mencionamos anteriormente, al momento de evaluar la procedencia de la indemnización o su adelanto, debemos tener en mente lo dispuesto tanto en el Art. 4.08 de la Ley Núm. 164-2009, *supra*, como en los estatutos corporativos o cualquier otro documento privado de la corporación que incida sobre tal derecho. En lo pertinente a la controversia de autos, el Art. VII, sec. 5 los estatutos corporativos de Multinational Life disponen lo siguiente:

> Each Director and Officer, whether or not then in office, shall be and by virtue of the enactment of this By-laws is hereby indemnified by the Corporation against any loss, including costs and reasonable counsel fees arising from any civil claim or claims or any criminal proceeding which may be made against such Director(s) and/or Officer(s) by reason of any alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act done or alleged to have been done while acting in his (or their) respective capacity of Director(s). **The foregoing right of indemnification shall not, however, include claims arising from violation of the Insurance Code of Puerto Rico by such Director(s) or Officer(s) for which he may be personally responsible under the provision of said Code.** The foregoing right of indemnification shall not be exclusive of any other right to which such Director(s) or Officer(s) may be entitled as a matter of law. Véase el Apéndice del recurso de Certiorari, pág. 2642 (Énfasis nuestro).

Del lenguaje del estatuto corporativo antes citado surgen varios asuntos de importancia. Primero, como regla general, los directores y oficiales de Multinational Life (antes NALIC) habrán de ser indemnizados por las reclamaciones en su contra. Esto incluye a los antiguos directores y oficiales de la corporación, tal como lo es el caso de los recurridos.

Sin embargo, en el mismo estatuto corporativo se dispone una excepción a la indemnización de oficiales y directores, ya que expresa categóricamente que la indemnización no habrá de concederse en aquellos casos en los cuales los directores y oficiales se enfrenten a reclamaciones relacionadas a violaciones al Código de Seguros de Puerto Rico, *supra*. Como mencionamos, el Art. 4.08(f) de la Ley Núm. 164-2009, *supra,* permite que los estatutos corporativos puedan restringir el derecho a indemnización. Ciertamente, esta excepción es aplicable a la controversia de autos, pues entre las causas de acción reclamadas existen imputaciones de violaciones al Código de Seguros de Puerto Rico. *Id.*

Finalmente, a pesar de que el Art. 4.08(f) de la Ley Núm. 164-2009 lo permite, *id.,* en ningún lugar del estatuto corporativo citado se dispone para que los adelantos de indemnizaciones procedan automáticamente a favor de los recurridos como cuestión de derecho. Así las cosas, los recurridos tampoco tienen derecho a recobrar costas, gastos y honorarios de abogado por virtud de los

estatutos corporativos de Multinational Life en esta etapa de los procedimientos.

Resolvemos que también erró el Tribunal de Apelaciones al confirmar el pago por concepto de indemnización a favor de los recurridos. Conforme al Art. 4.08 de la Ley Núm. 164-2009, *supra*, y los estatutos corporativos de Multinational Life, a los recurridos no les asiste el derecho a ser indemnizados por concepto de costas, gastos y honorarios de abogados en esta etapa de los procedimientos.

Ahora bien, aclaramos que una vez finalizado el pleito e independientemente de a favor de qué parte recaiga la Sentencia que en su día se emita, el Art. 4.08(c) autoriza al Tribunal para que, mediante solicitud al efecto y tomando en cuenta todas las circunstancias del caso, ordene a Multinational Life a otorgarle una indemnización justa y razonable a los recurridos.

IV

Por los fundamentos que anteceden, revocamos la Sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para procedimientos ulteriores que sean consistentes con lo aquí resuelto.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Multinational Life Insurance Company<br><br>    Peticionaria<br><br>        v.<br><br>Carlos M. Benítez Rivera y otros<br><br>    Recurridos<br><br>        v.<br><br>Tobías Carrero Nácar y otros<br><br>    Terceros Demandados | CC-2014-306 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 18 de mayo de 2015.

Por los fundamentos que anteceden, revocamos la Sentencia emitida por el Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para procedimientos ulteriores que sean consistentes con lo aquí resuelto.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo